[L.A. No. 32145. Nov. 2, 1987.]

DYNA-MED, INC., Plaintiff and Appellant, v.
FAIR EMPLOYMENT AND HOUSING COMMISSION, Defendant
and Respondent.

**COUNSEL**

Mickeal Gehringer, Michael Wischkaemper, McDonald & Allen, Stephen P. McDonald and Rosemary A. Sullivan for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Willard Z. Carr, Jr., Paula L. Hemminger, Jerome M. Behrens, Behrens & Viau, James C. Paras, Morrison & Foerster, Stephen A. Bokat, Paula J. Connelly, Michael D. Ott, County Counsel (Madera), and Greg Kamptner, Deputy County Counsel, as Amici Curiae on behalf of Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Andrea S. Ordin, Chief Assistant Attorney General, Beverly Tucker and Marian M. Johnston, Deputy Attorneys General, for Defendant and Respondent.

Joan M. Graff, Robert Barnes, Rebecca I. McKee, Patricia S. Mar, Martha J. Shaver, Feldman, Waldman & Kline, Judith E. Kurtz and Nancy L. Davis as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

PANELLI, J.—In *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211 [185 Cal.Rptr. 270, 649 P.2d 912] (hereafter *Commodore Home*), we held that a court may award punitive damages in a civil suit for job discrimination pursuant to the California Fair Employment and Housing Act (FEHA or Act) (Gov. Code, § 12900 et seq.).[1] The issue in the present case is whether the FEHA authorizes the Fair Employment and Housing Commission (Commission or the commission) to impose punitive damages, a question left unresolved in *Commodore Home*.[2] (*Id.* at p. 220.) As will appear, we conclude that the FEHA does not authorize the commission to award punitive damages.

### I. BACKGROUND

The California Fair Employment Practice Act (FEPA) was enacted in 1959 (former Lab. Code, § 1410 et seq.; see Stats. 1959, ch. 121, § 1, pp. 1999-2005) and recodified in 1980 as part of the FEHA (Stats. 1980, ch. 992, § 4, p. 3140 et seq.). "The law establishes that freedom from job discrimination on specified grounds, . . . is a civil right. (§ 12921.) It declares that such discrimination is against public policy (§ 12920) and an unlawful employment practice (§ 12940). [Fn. omitted.]" (*Commodore Home, supra,* 32 Cal.3d at p. 213.) The statute creates two administrative bodies: the

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

[2] The majority in *Commodore Home* assumed for purposes of argument that punitive damages are not available from the commission. (32 Cal.3d at p. 218, fn. 7.) Justice Richardson, dissenting, joined by Justice Kaus, expressly concluded that the FEHA does not allow the commission to award exemplary damages. (32 Cal.3d at p. 228.)

Department of Fair Employment and Housing (the department) (§ 12901), whose function is to investigate, conciliate, and seek redress of claimed discrimination (§ 12930), and the commission, which performs adjudicatory and rulemaking functions (§ 12935; see also § 12903). An aggrieved person may file a complaint with the department (§ 12960), which must promptly investigate (§ 12963). If the department deems a claim valid it seeks to resolve the matter—in confidence—by conference, conciliation, and persuasion. (§ 12963.7.) If that fails or seems inappropriate, the department may issue an accusation to be heard by the commission. (§§ 12965, subd. (a), 12969.) The department acts as prosecutor on the accusation and argues the complainant's case before the commission. (*State Personnel Bd.* v. *Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 428 [217 Cal.Rptr. 16, 703 P.2d 354]; *Commodore Home, supra,* 32 Cal.3d at p. 213.)

If an accusation is not issued within 150 days after the filing of the complaint or if the department earlier determines not to prosecute the case and the matter is not otherwise resolved, the department must give the complainant a "right to sue" letter. The complainant may then bring a civil suit in superior court. (§ 12965, subd. (b); see *Commodore Home, supra*, 32 Cal.3d at pp. 213-214.)

In the instant case Linda Olander initially filed a complaint with the department alleging that Dyna-Med, Inc. (Dyna-Med) discriminated against her with regard to wages and promotional opportunities on the basis of sex in violation of the FEPA. The complaint was resolved by means of a written settlement agreement pursuant to which Dyna-Med agreed, inter alia, not to engage in retaliatory action against Olander for filing the complaint.[3] Approximately five hours after executing the agreement, Dyna-Med fired Olander. Olander filed a new complaint, alleging that she was fired in retaliation for her original complaint. Following a hearing, the commission issued its decision ordering Dyna-Med to pay Olander her lost wages, plus $7,500 in punitive damages.[4] The superior court denied Dyna-Med's

---

[3] Retaliation for filing a complaint was also prohibited by the FEPA. (Former Lab. Code, § 1420, subd. (e); see now Gov. Code, § 12940, subd. (f).)

[4] The department did not initially ask for punitive damages, but did so only after the administrative law judge's proposed decision, whereupon the commission granted the department leave to amend its accusation to include a prayer for exemplary damages and ordered that the matter be reopened for the taking of additional evidence and argument on the issue. (See §§ 11516, 11517, subd. (c).) Following the supplemental hearing, the administrative law judge (ALJ) denied the department's request on grounds that to impose liability on Dyna-Med for exemplary damages would be "fundamentally unfair" and in violation of its right to due process of law in that the amended accusation seeking such damages was based in part on evidence given by Dyna-Med in defense of the original accusation, at which time Dyna-Med had no notice of a possible later charge "in aggravation and substantially enhanced liability, without legal precedent."

petition for a writ of mandate. The Court of Appeal affirmed. We granted review.

The sole issue before us is whether the FEHA grants the commission authority to award punitive damages. Resolution of this issue depends on the meaning of section 12970, subdivision (a), which sets forth the scope of relief available from the commission. That section provides: "If the commission finds that a respondent has engaged in any unlawful practice under this part, it shall state its findings of fact and determination and shall issue . . . an order requiring such respondent to cease and desist from such unlawful practice and to take such action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, and restoration to membership in any respondent labor organization, as, in the judgment of the commission, will effectuate the purposes of this part, and including a requirement for report of the manner of compliance."

Before addressing the parties' arguments we state briefly the basis for the Court of Appeal's determination that the commission is authorized to award punitive damages.

"It is undisputed," the Court of Appeal stated, "an administrative agency's power to award such damages must arise from express authorization. Here, the Legislature delegated broad authority to the Commission to fashion appropriate remedies for unlawful employment practices in section 12970, subdivision (a): [¶] 'If the commission finds that a respondent has engaged in any unlawful practice under this part, it . . . shall issue and cause to be served on the parties an order requiring such respondent . . . to take such action, *including, but not limited to,* hiring, reinstatement or upgrading of employees, with or without back pay, and restoration to membership in any respondent labor organization, *as, in the judgment of the commission,* will effectuate the purposes of this part, and including a requirement for report of the manner of compliance.'. . . [¶] Attempting to harmonize this specific provision in context of the entire statutory framework, we find in section 12920 the underlying purpose of the act is to provide effective remedies to eliminate discriminatory employment practices. Consequently, considering the legislative mandate to liberally construe the act to further these purposes (§ 12993), we conclude it has statutorily authorized the Commission to impose punitive damages where

---

In reversing the ALJ, the commission stated that the ALJ found that Dyna-Med's conduct "was sufficiently egregious to support an award" of such damages. The record, however, shows that the ALJ found *only* that the department had "adduced evidence" in support of its allegations that Dyna-Med's violations were particularly "deliberate, egregious or inexcusable" so as to support the award of such damages.

necessary to effectively remedy and eliminate unlawful FEHA employment practices." (Italics in original.)

In the Court of Appeal's judgment, the facts of the instant case "prove ordinary restitutionary remedies are often ineffective in eliminating discriminatory practices."[5] The court thus determined that "in light of the limited remedial effect of [the] permissible compensatory remedies, the award of punitive damages may be the only method of fulfilling the purposes of the act, including encouraging plaintiffs to seek relief by increasing their potential recovery. . . ."

## II. DISCUSSION

■ Petitioner Dyna-Med and its amici[6] argue that although the Court of Appeal correctly recognized that the statutory language and legislative history of section 12970, subdivision (a) are determinative of the issue before us, the court misread the statute and misapplied common principles of statutory construction in concluding that the Legislature has authorized the commission to award punitive damages.

Respondent Commission and its amici[7] maintain that the FEHA is unambiguous in authorizing broad relief limited only by the judgment of the commission as to what will effectuate the purposes of the Act, and that the commission has properly determined that the award of exemplary damages in appropriate cases is necessary to deter deliberate discrimination.

### A. *Statutory Language*

■ Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary

---

[5] The court stated that awards of back pay are frequently insignificant because interim earnings are deducted or offset; the value of reinstatement may be negligible because by the time employment discrimination cases are resolved, the plaintiff has had to find another job; and upgrading, back pay and reinstatement in cases of retaliation, as here, may not be effective deterrents or satisfactory remedies because the original work environment may no longer be conducive to the complainant's continued employment.

[6] Amici appearing in support of Dyna-Med are the Chamber of Commerce of the United States, the California Chamber of Commerce, the Merchants and Manufacturers Association, the County of Madera, and Friendly Ford Peugeot. Arguments advanced by Dyna-Med and its supporting amici will hereafter be referred to as Dyna-Med's arguments.

[7] Amici appearing in support of the commission are the Employment Law Center of the Legal Aid Society of San Francisco and Equal Rights Advocates, Inc. Arguments advanced by the commission and its supporting amici will hereafter be referred to as Commission's arguments.

import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]; *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224], and cases cited; see also *Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 484-485 [208 Cal.Rptr. 724, 691 P.2d 272].) Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. (*Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].) ▪ Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. (*California Mfrs. Assn., supra,* 24 Cal.3d at p. 844; see also *Steilberg* v. *Lackner* (1977) 69 Cal.App.3d 780, 785 [138 Cal.Rptr. 378].) A statute should be construed whenever possible so as to preserve its constitutionality. (See *Department of Corrections* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 197, 207 [152 Cal.Rptr. 345, 589 P.2d 853]; *County of Los Angeles* v. *Riley* (1936) 6 Cal.2d 625, 628-629 [59 P.2d 139, 106 A.L.R. 903]; *County of Los Angeles* v. *Legg* (1936) 5 Cal.2d 349, 353 [55 P.2d 206].)

We consider, therefore, the statutory language in the context of the legislative purpose. The Legislature has declared that the purpose of the FEHA is to provide effective remedies which will eliminate discriminatory practices. (§ 12920.) ▪ Webster's Dictionary defines a "remedy" in part as "something that corrects or counteracts an evil: corrective, counteractive, reparation . . . . [T]he legal means to recover a right or to prevent or obtain redress for a wrong. . . ." (Webster's New Internat. Dict. (3d ed. 1961) p. 1920, col. 1.) Here the statutorily authorized remedies—hiring, reinstatement, upgrading with or without back pay, restoration to membership in a respondent labor organization—are exclusively corrective and equitable in kind. They relate to matters which serve to make the aggrieved employee whole in the context of the employment.

Punitive damages, by contrast, are neither equitable nor corrective; punitive damages serve but one purpose—to punish and through punishment, to deter. ▪ "Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." (*Newport* v. *Fact Concerts, Inc.* (1981) 453 U.S. 247, 266-267 [69 L.Ed.2d 616, 632, 101 S.Ct. 2748]; see *Neal* v. *Farmers Ins.*

*Exchange* (1978) 21 Cal.3d 910, 928, fn. 13 [148 Cal.Rptr. 389, 582 P.2d 980].)

■ The general rule is that "[w]here the enabling statute is essentially remedial, and does not carry a penal program declaring certain practices to be crimes or provide penalties or fines in vindication of public rights, an agency does not have discretion to devise punitive measures such as the prescription of penalties or fines. The statutory power to command affirmative action is remedial, not punitive." (Modjeska, Administrative Law Practice and Procedure (1982) Sanctions and Remedies, § 5.9, pp. 170-171, fns. omitted; see *Edison Co.* v. *Labor Board* (1938) 305 U.S. 197, 235-236 [83 L.Ed. 126, 143, 59 S.Ct. 206]; see also *Youst* v. *Longo* (1987) 43 Cal.3d 64, 82-83 [233 Cal.Rptr. 294, 729 P.2d 728] [where regulatory scheme provides for one kind of relief and is silent on another, it should be construed to exclude the latter].)

■ Commission acknowledges that punitive damages are different in kind from the enumerated remedies, but argues that in certain cases, as here, where there was "intentional egregious" discrimination and the make-whole remedies are inappropriate,[8] the imposition of exemplary damages is necessary as a deterrent to effectuate the purpose of the Act to eliminate employment discrimination. Citing the statutory directive that the provisions of the Act shall be liberally construed (§ 12993), Commission argues that the language empowering it to take such action "including, but not limited to," the specified actions, is sufficiently broad to authorize it to award punitive damages. By regulation since repealed and in its precedential decisions, the commission has itself so interpreted the statute.[9]

■ The contemporaneous construction of a new enactment by the administrative agency charged with its enforcement, although not controlling, is entitled to great weight. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281]; *People* v. *McGee* (1977) 19 Cal.3d 948, 961 [140 Cal.Rptr. 657,

---

[8] Olander did not seek reinstatement at Dyna-Med. See also footnote 5, *ante.*

[9] In 1980 the commission promulgated a regulation which provided: "While normal monetary relief shall include relief in the nature of back pay, reasonable exemplary or compensatory damages may be awarded in situations involving violations which are particularly deliberate, egregious or inexcusable." (Former Cal. Admin. Code, tit. 2, § 7286.9, subd. (c), Cal. Admin. Notice Register, tit. 2, Register 80, No. 25-A—6-21-80; see also *D.F.E.H.* v. *Ambylou Enterprises, Inc.* (1982) FEHC No. 82-06 [CEB precedential decisions 1982-1982, CEB 3].) This regulation was applied in the instant case. Although the regulation was repealed in 1985 (Cal. Admin. Notice Register, tit. 2, Register 85, No. 20—5-16-85), the commission continues to award exemplary as well as compensatory damages.

Neither the regulation nor the precedential decisions stating the commission's authority to award punitive damages was in effect at the time of Olander's discharge.

568 P.2d 382]; *City of Los Angeles* v. *Rancho Homes, Inc.* (1953) 40 Cal.2d 764, 770-771 [256 P.2d 305].) The commission's interpretation of the Act as authorizing it to award punitive damages was not, however, "contemporaneous." Not until 1980—more than 20 years after the Act's enactment—did the commission undertake to award damages. (See fn. 9, *ante.*) The final meaning of a statute, moreover, rests with the courts. An administrative agency cannot by its own regulations create a remedy which the Legislature has withheld. (*Commodore Home, supra,* 32 Cal.3d at p. 227 (dis. opn. of Richardson, J.); see *Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 117 [172 Cal.Rptr. 194, 624 P.2d 244]; *J. R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 29 [160 Cal.Rptr. 710, 603 P.2d 1306]; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].) " 'Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations.' [*Morris* v. *Williams, supra,* and cases cited.] And this is the rule even when, as here, 'the statute is subsequently reenacted without change.' [Citation.]" (*American National Ins. Co.* v. *Fair Employment & Housing Com.* (1982) 32 Cal.3d 603, 618-619 [186 Cal.Rptr. 345, 651 P.2d 1151] (dis. opn. of Mosk, J.). See also *Nadler* v. *California Veterans Board* (1984) 152 Cal.App.3d 707, 718-719 [199 Cal.Rptr. 546].)

■ We take no issue with the premise that exemplary damages would serve to deter discrimination. Nor do we dispute that the phrase "including, but not limited to" is a phrase of enlargement. (See *American National Ins. Co.* v. *Fair Employment & Housing Com., supra,* 32 Cal.3d at p. 611 (dis. opn. of Mosk, J.); *Fraser* v. *Bentel* (1911) 161 Cal. 390, 394 [119 P. 509]; 2A Sutherland, Statutory Construction (4th ed. 1984) § 47.07, p. 133 [hereafter Sutherland].) Nevertheless, given the extraordinary nature of punitive damages, these factors, in our view, are insufficient to support an inference that the Legislature intended sub silentio to empower the commission to impose punitive damages. Commission's argument, taken to its logical conclusion, would authorize every administrative agency granted remedial powers to impose punitive damages so long as the statute directs that its provisions are to be liberally construed to effectuate its purposes.[10]

Seeking to alleviate concern that a "flood of agencies" would arrogate to themselves similar authority, Commission states that only four other agencies have been granted comparable statutory authority to order actions that will effectuate the purposes of the acts they enforce—the Agricultural La-

---

[10]The Court of Appeal reached just this conclusion. According to the Court of Appeal: "If the Legislature gives an agency responsibility to protect the public and authorizes it to take the appropriate steps necessary to carry out the purposes of an act it enforces, then such an agency should be authorized to determine claims for punitive damages."

bor Relations Board (ALRB) (Lab. Code, § 1160.3); the Public Employment Relations Board (PERB) (§ 3541.5); the State Personnel Board (§ 19702, subd. (e)); and the California Horse Racing Board (Bus. & Prof. Code, § 19440)—and none awards punitive damages.

That no similarly empowered agency awards punitive damages lends support, in our view, to the conclusion that the power to make punitive assessments will not be implied merely from a legislative directive that an act's remedial provisions are to be liberally construed to effectuate its purposes. Indeed, in *Youst* v. *Longo, supra,* 43 Cal.3d 64, we specifically determined that the broad powers the Legislature vested in the California Horse Racing Board do not include the power to award compensatory or punitive tort damages. "[T]he power to award compensatory and punitive tort damages to an injured party is a judicial function. Although the [Horse Racing] Board has very broad power to regulate and discipline wrongful conduct which involves horseracing in California, the relevant statutes do not authorize affirmative compensatory relief such as tort damages." (*Id.* at p. 80, italics omitted.)

As the United States Supreme Court stated in another context: "[I]t is not enough to justify the Board's requirements to say that they would have the effect of deterring persons from violating the Act. That argument proves too much, for if such a deterrent effect is sufficient to sustain an order of the Board, it would be free to set up any system of penalties which it would deem adequate to that end. [¶] . . . [A]ffirmative action to 'effectuate the policies of this Act' is action to achieve the remedial objectives which the Act sets forth." (*Republic Steel Corp.* v. *Labor Board* (1940) 311 U.S. 7, 12 [85 L.Ed. 6, 10, 61 S.Ct. 77]; accord, *Carpenters Local* v. *Labor Board* (1961) 365 U.S. 651, 655 [6 L.Ed.2d 1, 4, 81 S.Ct. 875]; see *Laflin & Laflin* v. *Agricultural Labor Relations Bd.* (1985) 166 Cal.App.3d 368, 380-381 [212 Cal.Rptr. 415].)

A more reasonable reading of the phrase "including, but not limited to," is that the Legislature intended to authorize the commission to take such other remedial action as in its judgment seems appropriate to redress a particular unlawful employment practice and to prevent its recurrence, thus eliminating the practice.[11] ▓▓▓▓▓▓▓▓▓▓▓▓ A reading of the phrase as permitting only additional corrective remedies

---

[11] For example, in a recent age and race discrimination case involving the termination of a Black attorney, the negotiated settlement agreement provided for a year's severance pay and a special retirement plan, plus the company's informing all its supervisors that harassment is illegal and contrary to company policy. (*Arco Settles With Former Employee,* The Recorder (Mar. 10, 1987) p. 2, col. 4.)

comports with the statutory construction doctrines of *ejusdem generis*,[12] *expressio unius est exclusio alterius*[13] and *noscitur a sociis*.[14] (See *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, supra,* 25 Cal.3d at pp. 330-331 [applying *ejusdem generis*]; see also *Richerson v. Jones* (3d Cir. 1977) 551 F.2d 918, 927 [*ejusdem generis* invoked in concluding that the Federal Equal Employment Opportunity Act of 1972 does not authorize punitive assessments].) Although these canons of construction are mere guides and will not be applied so as to defeat the underlying legislative intent otherwise determined (*Cal. State Employees' Assn. v. Regents of University of California* (1968) 267 Cal.App.2d 667, 670 [73 Cal.Rptr. 449]), their application here to limit the commission's authority to the ordering of corrective, nonpunitive action is consistent with both the remedial purpose of the Act and the ordinary import of the statutory language.

This reading, moreover, harmonizes the various parts of the statute. Section 12964, referring to resolution of allegedly unlawful practices through conciliation, provides that "such resolutions may be in the nature of, but are not limited to, types of remedies that might be ordered after accusation and hearing," i.e., the section 12970 remedies. While the corrective remedies enumerated in section 12970 are appropriate to impose in the context of a resolution by conciliation, punitive damages are antithetical to the conciliation process and, as indicated, are not "in the nature of" the type of remedy authorized by section 12970.

A construction of section 12970 that limits the commission to corrective, nonpunitive remedies also harmonizes the Act with the statutory provisions governing the award of punitive damages in civil actions. Civil Code section 3294, subdivision (a) allows the award of exemplary damages only when the defendant has been guilty of "oppression, fraud, or malice."

---

[12] " '[T]he doctrine of *ejusdem generis* . . . states that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage.' " (*Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 331, fn. 10 [158 Cal.Rptr. 370, 599 P.2d 676], quoting *Scally v. Pacific Gas & Electric Co.* (1972) 23 Cal.App.3d 806, 819 [100 Cal.Rptr. 501].)

[13] *Expressio unius est exclusio alterius* means that "the expression of certain things in a statute necessarily involves exclusion of other things not expressed. . . ." (*Henderson v. Mann Theatres Corp.* (1976) 65 Cal.App.3d 397, 403 [135 Cal.Rptr. 266].)

[14] Under the rule of *noscitur a sociis,* " 'the meaning of a word may be enlarged or restrained by reference to the object of the whole clause in which it is used.' " (*People v. Stout* (1971) 18 Cal.App.3d 172, 177 [95 Cal.Rptr. 593], quoting *Vilardo v. County of Sacramento* (1942) 54 Cal.App.2d 413, 420 [129 P.2d 165].)

This provision codifies the universally recognized principle that "[t]he law does not favor punitive damages and they should be granted with the greatest caution." (*Beck* v. *State Farm Mut. Auto. Ins. Co.* (1976) 54 Cal.App.3d 347, 355 [126 Cal.Rptr. 602].) Although the commission evidently has adopted the statutory standard, nothing in the FEHA requires it to do so or provides any guidelines for the award of punitive damages.[15]

Further, subdivision (b) of Civil Code section 3294 provides that in an action for the breach of an obligation not arising out of contract, an employer shall not be liable for exemplary damages based on the conduct of his employee unless "the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct . . . or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." Because the FEHA contains no comparable limitation on an employer's liability for his employee's wrongful acts (see §§ 12926, subd. (c), 12940, subd. (a)), interpreting the Act as authorizing the commission to award punitive damages would expose an employer in an administrative proceeding to greater derivative liability than in a judicial action.

Finally, Civil Code section 3295 precludes discovery of a defendant's financial condition in actions seeking exemplary damages until the plaintiff has established a prima facie entitlement thereto. (See generally *Rawnsley* v. *Superior Court* (1986) 183 Cal.App.3d 86, 90-91 [227 Cal.Rptr. 806].) This protection is inapplicable to administrative proceedings (see Code Civ. Proc., § 22 [defining "action"]) and no comparable provision appears in the FEHA.

■ Statutes are to be given a reasonable and commonsense interpretation consistent with the apparent legislative purpose and intent "and which, when applied, will result in wise policy rather than mischief or absurdity." (*Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1136, fn. 11 [203 Cal.Rptr. 886].) Absent express language dictating otherwise, it will not be presumed that the Legislature intended to authorize an administrative agency—free of guidelines or limitation—to award punitive damages in proceedings lacking the protections mandated in a court of law.

---

[15] We observe that the standard initially adopted by the commission and applied in this case—authorizing the award of punitive damages in cases of violations that are "particularly deliberate, egregious or inexcusable" (see fn. 9, *ante*)—was not in conformity with the statutory standard.

As we recognized in a related context, the Legislature's objective in providing for an administrative rather than a judicial resolution of discrimination complaints was to provide a "speedy and informal" process unburdened with "procedural technicalities." (*Stearns* v. *Fair Employment Practice Com.* (1971) 6 Cal.3d 205, 214 [98 Cal.Rptr. 467, 490 P.2d 1155] [concerning transfer to the Commission's predecessor of housing discrimination complaints].) "To achieve this end the [Fair Employment Practices Commission] established procedures that are as simple and uncomplicated as possible. Complaints are drafted by laymen; the commission informally attempts to eliminate discriminatory practices before instituting formal accusations; the commission, on a finding of discrimination, may fashion remedies both to correct unique cases of such practice as well as to curb its general incidence." (*Ibid.*) The award of punitive damages—"traditionally . . . limited to the judicial forum with its more extensive procedural protections" (*Commodore Home, supra,* 32 Cal.3d at p. 217, fn. 6; see also *Curtis* v. *Loether* (1974) 415 U.S. 189, 196-197 [39 L.Ed.2d 260, 268, 94 S.Ct. 1005])—has no place in this scheme.

In sum, we are of the view that the statutory language, given its ordinary import and construed in context of the purposes and objectives of the law, together with the Legislature's silence on the issue of punitive damages, compels the conclusion that the Legislature did not intend to grant the commission authority to award punitive damages. If, as Commission argues, the inability to award such damages deprives it of an effective means to redress and prevent unlawful discrimination, it is for the Legislature, rather than this court, to remedy this defect. We are not, however, convinced that the commission lacks sufficient means to redress and eliminate discrimination. The Act authorizes class actions and permits the director of the department to address systematic problems, such as pattern and practice matters, by bringing a complaint on his or her own motion. (§§ 12960, 12961; *Snipes* v. *City of Bakersfield* (1983) 145 Cal.App.3d 861, 867 [193 Cal.Rptr. 760].) The commission, in turn, has broad authority to fashion an appropriate remedy without resort to punitive damages. (See, e.g., fn. 11, *ante*; cf. *McDaniel* v. *Cory* (Alaska 1981) 631 P.2d 82, 88.) The statutory scheme provides for compliance review and judicial enforcement of commission orders (§ 12973) and makes it a misdemeanor offense for any person wilfully to violate an order of the commission (§ 12975).

Although we believe that statutory interpretation disposes of the issue, we nevertheless address the additional arguments advanced by the parties.

B. *Legislative History*

In support of their respective arguments, both parties cite the legislative history of the Act and the Legislature's failure since its enactment to modify it or adopt various proposed amendments.

As indicated above, the FEPA was enacted in 1959 (former Lab. Code, § 1410 et seq.). That same year the Legislature also enacted the Hawkins Act (former Health & Saf. Code, § 35700 et seq., enacted by Stats. 1959, ch. 1681, § 1, pp. 4074-4077), prohibiting housing discrimination, and the Unruh Civil Rights Act (Civ. Code, §§ 51-52, enacted by Stats. 1959, ch. 1866, §§ 1-4, p. 4424, replacing former Civ. Code, §§ 51-54, added by Stats. 1905, ch. 413, §§ 1-4, pp. 553-554), prohibiting discrimination in business establishments. (See *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 500 [86 Cal.Rptr. 88, 468 P.2d 216] [concurrent enactment of FEPA and Civil Rights Act evinced legislative intent to exclude employment discrimination from the latter act].) While both the Hawkins and Unruh Acts provided for judicial relief and authorized the award of damages,[16] the FEPA provided for administrative relief and made no mention of damages.

In 1963 the Hawkins Act was replaced by the Rumford Fair Housing Act (former Health & Saf. Code, § 35700 et seq., enacted by Stats. 1963, ch. 1853, §§ 1-4, pp. 3823-3830), which for the first time afforded an administrative remedy for housing discrimination. Although the Rumford Act retained language authorizing the award of damages, it transformed the statutory minimum recoverable in judicial proceedings (see fn. 16, *ante*) into a statutory maximum in administrative proceedings.[17] In 1980 the employment and housing statutory schemes were combined to form the FEHA, with enforcement of both sections of the Act vested in the commission. (Stats. 1980, ch. 992, § 4, pp. 3140-3142.)

Dyna-Med argues that in light of the parallel development of legislation governing employment and housing discrimination and the ultimate union of the respective acts in one, with common enforcement procedures, it is significant that the Legislature, while authorizing the award of damages in housing cases, has never done so in employment cases. Had the Legislature intended to authorize the commission to award damages in employment

---

[16] The Hawkins Act permitted complainants to sue for both equitable relief and damages in an amount of not less than $500. (Stats. 1959, ch. 1681, § 1, at p. 4076.) The Civil Rights Act authorized the award of actual damages, plus punitive damages in the amount of $250. (Stats. 1959, ch. 1866, § 2, p. 4424.)

[17] The Rumford Act initially empowered the commission's predecessor, the Fair Employment Practices Commission (FEPC), if it determined that certain make-whole remedies were not available, to award damages in an amount not to exceed $500. (Stats. 1963, ch. 1853, § 2, pp. 3828-3829.) In 1975 the maximum damage award was increased to $1,000. (Stats. 1975, ch. 280, § 1, p. 701.) In 1977 the act was amended to authorize the FEPC to order payment of "actual and punitive" damages not exceeding $1,000. The 1977 amendment also for the first time described the FEPC's authority to require remedial action in housing discrimination cases as "including, but not limited to" the actions specified. (Stats. 1977, ch. 1187, § 10, p. 3893; ch. 1188, § 13.1, pp. 3905-3906.) In 1981 the statute was rewritten to remove the limit on the amount of compensatory damages, while retaining a $1,000 limit, adjusted for inflation, on punitive damages. (§ 12987, subd. (2), Stats. 1981, ch. 899, § 3, p. 3424.)

cases, it knew how to do so, as it demonstrated in enacting the other civil rights statutes.

Commission, in turn, asserts that the separate origins of the housing and employment discrimination statutes explain why one explicitly allows damages and the other does not. Moreover, the remedy provisions in the housing section expressly note punitive damages only to limit their availability. (§ 12987, subd. (2).)[18] Consequently, the absence of any express reference to such damages within the employment context should be construed not as a lack of authority, but rather, as a lack of limitation on such damages.

Commission's argument is unpersuasive. A review of the relevant statutes discloses that when the Legislature intends to authorize an agency to award damages for discrimination, it does so expressly (e.g., § 12987, subd. (2) [housing]; § 19702, subd. (e) [civil service]; cf. Civ. Code, § 52, subd. (a) [civil action against business establishments]), and when it authorizes the award of a penalty or punitive damages, it limits the amount (§ 12987, subd. (2) [$1,000]; cf. Civ. Code, § 52, subd. (a) [no more than three times actual damages]).

Commission observes that since 1980 when it first interpreted the FEHA as authorizing the award of punitive damages, the Legislature has amended the Act several times without addressing the remedy provisions.[19] This inaction, Commission argues, is an indication that its ruling was consistent with the Legislature's intent. (See *Coca-Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 922 [156 P.2d 1]; *Action Trailer Sales, Inc.* v. *State Bd. of Equalization* (1975) 54 Cal.App.3d 125, 133-134 [126 Cal.Rptr. 339].)

Dyna-Med, by contrast, relies on a bill introduced but not enacted by the Legislature in 1976 (Assem. Bill No. 3124, 2 Assem. Final Hist. (1975-1976 Sess.) p. 1658), which would expressly have authorized the commission to award limited damages in employment discrimination cases, and on the provision of Senate Bill No. 2012, introduced in 1984, which would have amended section 12970, subdivision (a) to specifically authorize compensatory and punitive damages as "declaratory of existing law," but which was removed before the bill's enactment (see Stats. 1984, ch. 1754, § 3, p. 6406).

---

[18] As indicated, section 12987, as amended 1981, provides for the payment of punitive damages not to exceed $1,000, adjusted annually for inflation, and the payment of actual damages. Before its amendment, the section provided for the payment of actual and punitive damages not to exceed $1,000. (See fn. 17, *ante*.)

[19] During the 1981-1982 legislative session, the Legislature twice declined to enact statutes (Sen. Bill No. 516; Assem. Bill No. 879) which, in part, would have prohibited the commission from awarding punitive damages. (See Sen. Final Hist. (1981-1982 Reg. Sess.) p. 339; 1 Assem. Final Hist. (1981-1982 Reg. Sess.) p. 647.)

We find the subsequent legislative history of the statute ambiguous and of little assistance in discerning its meaning. The Legislature's failure to modify the statute so as to require an interpretation contrary to the commission's construction is not determinative: ▉▉▉ "[A]n erroneous administrative construction does not govern the interpretation of a statute, even though the statute is subsequently reenacted without change. [Citations.]" (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757-758 [151 P.2d 233, 155 A.L.R. 405].) Similarly inconclusive is the Legislature's rejection of specific provisions which would have expressly allowed the award of damages. ▉▉▉ Unpassed bills, as evidences of legislative intent, have little value. (See *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 735, fn. 7 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161]; *Miles* v. *Workers' Comp. Appeals Bd.* (1977) 67 Cal.App.3d 243, 248, fn. 4 [136 Cal.Rptr. 508]; see also *United States* v. *Wise* (1962) 370 U.S. 405, 411 [8 L.Ed.2d 590, 594-595, 82 S.Ct. 1354]; 2A Sutherland, *supra,* § 49.10, pp. 407-408.) This is particularly true here, where the rejected provisions manifest conflicting legislative intents: the 1976 provision would have limited the amount of damages the commission could award; the 1981-1982 provisions would have prohibited the commission from awarding punitive damages (see fn. 19, *ante*); and the 1984 amendment would have authorized the award of compensatory and punitive damages "as declaratory of existing law." (See generally *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 58 [69 Cal.Rptr. 480].)

Were we, however, to consider unpassed legislation, we would find it significant that at the same time the Legislature rejected the provision declaring the commission's authority to award damages, it amended the Civil Service Act to grant the Personnel Board authority identical to the commission's, *plus* the power to award compensatory damages. (Stats. 1984, ch. 1754, § 6, pp. 6408-6409; see § 19702, subd. (e).)[20] Where the Legislature simultaneously empowers one agency to award damages and declines similarly to empower another, there is a strong inference of a legislative intent to withhold the authority from the nonempowered agency. (See *City of Port Hueneme* v. *City of Oxnard* (1959) 52 Cal.2d 385, 395 [341 P.2d 318].)

---

[20]Subdivision (e), enacted 1984, provides in relevant part: "If the board finds that discrimination has occurred . . . the board shall issue . . . an order requiring the appointing authority to cause the discrimination to cease and desist and to take such action*, including, but not limited to,* hiring, reinstatement or upgrading of employees, with or without back pay, *and compensatory damages,* which, in the judgment of the board, will effectuate the purposes of this part. Consistent with this authority, the board may establish rules governing the award of compensatory damages." (Italics added.)

Subdivision (a) of section 19702 was amended at the same time to provide that "discrimination" includes harassment and that this provision "is declaratory of existing law." (Stats. 1984, ch. 1754, § 6, p. 1173.)

Further, if, as Commission argues, the nonexhaustive language of section 12970 were sufficient to embrace the authority to award damages, the specific references to damages in both the Civil Service Act and the housing section of the FEHA[21] would be mere surplusage. ■ "[S]tatutes must be harmonized, both internally and with each other, to the extent possible. [Citations.] Interpretive constructions which render some words surplusage . . . are to be avoided. [Citations.]" (*California Mfrs. Assn.* v. *Public Utilities Com., supra,* 24 Cal.3d at p. 844.)

As Justice Richardson, dissenting in *Commodore Home,* stated: "The express provision for damages in this parallel statutory scheme [the housing section of the FEHA]—strongly suggests . . . that the omission of [a punitive damages remedy] from the employment discrimination provisions was intentional. The Legislature has clearly demonstrated that it knows how to add a punitive remedy to this statute when it wishes to do so." (32 Cal.3d at p. 225.)

## C. *Federal and Other State Legislation*

The remedy language of section 12970 bears a close resemblance to section 10(c) of the National Labor Relations Act (NLRA) (29 U.S.C.A. § 151 et seq., § 160(c)) relating to unfair labor practices, which authorizes the National Labor Relations Board (NLRB) to issue a cease and desist order and require the violator "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter . . . ." Federal courts have continually interpreted the NLRA as not allowing monetary remedies other than back pay. (See *Edison Co.* v. *Labor Board, supra,* 305 U.S. 197, 235-236 [83 L.Ed.2d 126, 143]; *Van Hoomissen* v. *Xerox Corporation* (N.D.Cal. 1973) 368 F.Supp. 829, 837; see also *Commodore Home, supra,* 32 Cal.3d at p. 224 (dis. opn. of Richardson, J.).) Title VII of the federal Civil Rights Act of 1964, relating to employment discrimination, in section 706(g) similarly authorizes the trial court to "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . , or any other equitable relief as the court deems appropriate." (42 U.S.C.A. § 2000e-5(g).) This language, which was

---

[21]Section 12987 provides in pertinent part that in housing discrimination cases the commission shall issue an order requiring the respondent to "cease and desist from such [discriminatory] practice and to take such actions, as, in the judgment of the commission, will effectuate the purpose of this part, *including, but not limited to,* any of the following: [¶] (1) The sale or rental of the housing accommodation . . . or . . . of a like housing accommodation, . . . or the provision of financial assistance, . . . [¶] (2) *The payment of punitive damages in an amount not to exceed one thousand dollars dollars ($1,000),* adjusted annually in accordance with the Consumer Price Index, *and the payment of actual damages.* [¶] (3) Affirmative or prospective relief."

modeled after the NLRA (*Richerson v. Jones, supra,* 551 F.2d 918, 927), also has been interpreted by the majority of federal courts as barring monetary remedies other than back pay (*Great American Fed. S. & L. Assn. v. Novotny* (1979) 442 U.S. 366, 374-375 [60 L.Ed.2d 957, 965-966, 99 S.Ct. 2345]; see, e.g., *Shah v. Mt. Zion Hospital & Medical Ctr.* (9th Cir. 1981) 642 F.2d 268, 272; *Richerson v. Jones, supra,* at pp. 926-927; *Van Hoomissen v. Xerox Corporation, supra,* 368 F.Supp. 829, 836-838; *Commodore Home, supra,* at p. 225 and cases cited (dis. opn. of Richardson, J.)).

Dyna-Med invokes the principle that the use of identical language in analogous statutes requires like interpretation. (*Belridge Farms v. Agriculture Labor Relations Bd.* (1978) 21 Cal.3d 551, 557 [147 Cal.Rptr. 165, 580 P.2d 665].) Commission argues that the foregoing principle is inapposite because of the limiting reference in the NLRA to *affirmative* action and in title VII to *equitable* relief, as contrasted with section 12970's reference without modification to "action." Commission points further to the differing purposes of the NLRA and the FEPA: the first exists to promote industrial peace and stability through collective bargaining and to create a cooperative atmosphere of recognition between labor and management (*Carey v. Westinghouse Corp.* (1964) 375 U.S. 261, 271 [11 L.Ed.2d 320, 327-328, 84 S.Ct. 401]; *N.L.R.B. v. Pincus Bros., Inc.-Maxwell* (3rd Cir. 1980) 620 F.2d 367, 372-373; *Bloom v. N.L.R.B.* (D.C. Cir. 1979) 603 F.2d 1015, 1019), whereas the latter is designed to provide effective remedies to vindicate the individual's constitutional right to be free from employment discrimination and to eliminate discriminatory employment practices (*State Personnel Bd. v. Fair Employment & Housing Com., supra,* 39 Cal.3d at 432).

When first enacted, the FEPA, like the NLRA, combined the prosecutorial and adjudicative functions and provided only for administrative relief.[22] (Stats. 1959, ch. 121, § 1, pp. 1999-2005; see *Commodore Home, supra,* 32 Cal.3d at p. 218; cf. NLRA, § 10(b) & (c), 49 Stat. at pp. 453-454; *Labor Board v. Jones & Laughlin* (1937) 301 U.S. 1, 24-25 [81 L.Ed. 893, 904-905, 57 S.Ct. 615]; *Haleston Drug Stores v. National Labor Relations Bd., supra,* 187 F.2d 418, 421.) The FEPA also contained the identical "affirmative action" language as the NLRA. (Stats. 1959, *supra,* at p. 2004; *Commodore Home, supra,* 32 Cal.3d at p. 224 (dis. opn. of Richardson, J.).) In 1969 the Legislature amended Labor Code section 1426 to delete the word "affirmative." (Stats. 1969, ch. 526, § 1, p. 1142.) The legislative history

---

[22] A 1947 amendment to the NLRA separated the prosecuting and adjudicating functions within the NLRB. (NLRA, § 3(d), 29 U.S.C.A. § 153(d); *Haleston Drug Stores v. National Labor Relations Bd.* (9th Cir. 1951) 187 F.2d 418, 421.) In 1977 the FEPA was amended to achieve a comparable separation within the department and to establish the private right of action when the department fails to act. (Stats. 1977, ch. 1188, §§ 18-37, pp. 3906-3912.)

suggests that this amendment was passed not to expand the power of the FEPC, but rather, to avoid confusion with the newly acquired meaning of "affirmative action" that was embraced in a 1967 amendment authorizing the FEPC to engage in "affirmative actions" with employers, employment agencies, and labor organizations.[23] (See former Lab. Code, §§ 1413, subd. (g), 1431, added by Stats. 1967, ch. 1506, §§ 1-2, pp. 3573-3574; see now §§ 12927, subd. (a), 12988 [concerning housing discrimination].) Both the Enrolled Bill Report of the Department of Industrial Relations and the Enrolled Bill Memorandum of the Governor's Legislative Secretary state that the aim of the amendment was to "clear up any ambiguities . . . between the two sections of the law. In other words," according to the report and memo, "*Affirmative Action* in AB 544 [the 1967 amendment] was a little broader than Affirmative Action in Section 1426 of the Labor Code [the remedies provision]." (Italics in original; see also *Commodore Home, supra,* 32 Cal.3d at p. 224 (dis. opn. of Richardson, J.).) Deletion of the word "affirmative" thus is not dispositive of the Legislature's intent concerning application to the commission of federal precedent.

In *Commodore Home,* in the context of a civil action for punitive damages, we stated that differences between the federal laws and the FEHA—the NLRA provides no right of civil action and title VII provides only for judicial handling of federal discrimination claims—"diminish the weight of the federal precedents." (32 Cal.3d at p. 217.) The NLRA, we observed, "specifies remedies the board may impose, and the cases hold merely that its language prevents *that agency* from assessing compensatory or punitive damages. [¶] Contrastingly, title VII . . . expressly describes remedies that courts may assess. . . . [¶] The FEHA, on the other hand, provides separate routes to resolution of claims; first, a complaint to the Department; second, if that agency fails to act, a private court action. The statute discusses remedies only in the first context; here we are concerned with those available in the second. Federal precedents do not address that problem. [Fn. omitted.]" (*Ibid.,* italics added.)

In the instant case, by contrast, the issue is the nature of administrative remedies—the only remedies provided by the NLRA and initially provided by the FEPA. In these circumstances federal precedent under the NLRA would seem to be apposite. Because the FEPA when first enacted had the

---

[23] The 1967 amendment authorized the Division of Fair Employment Practices to engage in "affirmative actions" with employers, employment agencies, and labor organizations, and defined "affirmative actions" as any educational activity for the purpose of securing greater employment opportunities for members of racial, religious, or nationality minority groups and any promotional activity designed to the same end on a voluntary basis. The amendment further provided that it should not be construed to promote employment on a preferential or quota basis. (Stats. 1967, ch. 1506, §§ 1-5, pp. 3574-3575.)

identical language and procedure as the NLRA, it can reasonably be presumed that the Legislature intended the state agency to have the same powers—and only those powers—as its federal counterpart. (See *Belridge Farms* v. *Agricultural Labor Relations Bd., supra,* 21 Cal.3d at p. 557; cf. *Van Hoomissen* v. *Xerox Corporation, supra,* 368 F.Supp. at p. 837 [interpreting title VII in light of NLRA].) This is true notwithstanding the differing intents of the two acts, particularly since the remedial portion of each is designed to protect an employee against discriminatory practices.[24]

Although courts in other states are divided on the availability of compensatory damages under statutory schemes similar to the FEHA (see Annot. (1978) 85 A.L.R.3d 351, 356-357), we are unaware of any case upholding the award of punitive damages. Rather, the courts seem uniformly to hold that the authority of a state agency to assess exemplary damages must be express and will not be implied from a broad authority to implement the objectives of the fair employment statute. (E.g., *Woods* v. *Midwest Conveyor Co., Inc.* (1982) 231 Kan. 763 [648 P.2d 234, 244-245]; *McDaniel* v. *Cory, supra,* 631 P.2d 82, 86-89; *Ohio Civil Rights Commission* v. *Lysyj* (1974) 38 Ohio St.2d 217 [67 Ohio Ops.2d 287, 313 N.E.2d 3, 6-7, 70 A.L.R.3d 1137]; see also *High* v. *Sperry Corp.* (S.D. Iowa 1984) 581 F.Supp. 1246, 1248; see Annot., *supra,* 85 A.L.R.3d at p. 357.)

## D. *Equal Protection and Policy Considerations*

The FEHA, as indicated, provides two avenues for resolution of claims: "first, a complaint to the Department; second, if that agency fails to act, a private court action." (*Commodore Home, supra,* 32 Cal.3d at p. 217; see §§ 12960, 12965, subd. (b).) Observing that punitive damages are available to persons who pursue court action (*Commodore Home, supra,* 32 Cal.3d at p. 221), Commission argues that the denial of such damages to administrative complainants will create a disparate situation that will undermine the administrative avenue and thwart the Act's primary objective of resolving discrimination complaints through the administrative procedure: complainants will be encouraged to bypass the administrative forum in favor of court action; the department will forego seeking administrative relief in the most egregious cases when punitive damages are appropriate and be unable to engage in effective "conference, conciliation and persuasion" efforts to resolve the dispute (§ 12963.7); and because complete administrative relief

---

[24]Section 8(3) and (4) of the NLRA (29 U.S.C.A. § 158(a)(3) and (4)) makes it an unfair labor practice to discriminate against employees for union membership or charges filed under the NLRA. Section 10(a) (29 U.S.C.A. § 160(a)) authorizes the NLRB to prevent unfair labor practices. (See generally *Labor Board* v. *Jones & Laughlin, supra,* 301 U.S. at pp. 30, 32 [81 L.Ed.2d at pp. 907-908, 908-909].)

will be unavailable, the victims of the most outrageous situations will be forced to await relief from our already overburdened courts.

Further, denying exemplary damages in the administrative adjudication, Commission asserts, will create two classes of complainants: those who can afford to hire a private attorney and file a civil action and those "equally or even more deserving victims who lack the resources to pursue litigation by themselves and rely, instead, on the administrative process." Because economic standing is often strongly correlated with race, sex and other forms of prohibited discrimination (see *Brown* v. *Superior Court, supra,* 37 Cal.3d 477, 486), denial of the opportunity to obtain a punitive damages award solely because of the complainant's economic or social circumstances is contrary to the Legislature's intent to eliminate discrimination and raises serious equal protection concerns.

Commission's policy and equal protection arguments rest on speculative and seemingly conflicting premises: on the one hand, that when a case is appropriate for punitive damages, complainants will bypass the administrative forum and the department will forego seeking administrative relief, thus defeating the Act's objective of administrative resolution; and, on the other hand, that given the substantial volume of complaints received, the department pursues only the most egregious cases, with the result that claimants with weaker cases who can afford to sue will have access to exemplary damages while the most worthy victims whose cases are heard by the commission will be denied such recompense. We are aware of no authority supportive of either premise. Although Justice Richardson, dissenting in *Commodore Home,* spoke of the anomaly of allowing punitive damages to "accusors who have been unsuccessful administratively before the commission, [while denying] such damages to those whose claims have been successfully established" (32 Cal.3d at p. 222), this comment mistakenly assumes that a civil action is open only to those whose complaints the commission has refused to prosecute and overlooks the department's evident policy to permit any complainant to sue who wishes to, as well as the unlikelihood in any event of judicial recovery by a litigant whose claim the department has in fact found unworthy.

Concerning department policy, a former counsel to the department states: "Some respondents have asserted that a private right of action cannot be pursued before 150 days have passed, but this argument has not been accepted by most courts to which it is addressed. Because the investigation process . . . takes time, and because the Department, as a matter of sound administrative policy, handles employment cases on a first-in-first-out basis, it is virtually impossible for an accusation to issue in an employment case before 150 days have passed. Furthermore, because of the incredible volume

of cases handled by the Department—8,105 in fiscal year 1982—it would be a waste of resources to investigate a case the Department knows will be pursued in court. It is, therefore, the policy not to proceed on any case which will be pursued elsewhere. This decision is clearly within the Department's discretion. . . ." (Gelb & Frankfurt, *California's Fair Employment and Housing Act: A Viable State Remedy for Employment Discrimination* (1983) 34 Hastings L.J. 1055, 1066, fn. 87; see *Commodore Home, supra,* 32 Cal.3d at p. 218, fn. 8; *Carter* v. *Smith Food King* (9th Cir. 1985) 765 F.2d 916, 922-923.)

Thus, while the department no doubt pursues only cases it deems meritorious (*State Personnel Bd.* v. *Fair Employment & Housing Com., supra,* 39 Cal.3d at p. 434, fn. 14; see *Mahdavi* v. *Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326 [136 Cal.Rptr. 421]; *Marshall* v. *Fair Employment Practice Com.* (1971) 21 Cal.App.3d 680 [98 Cal.Rptr. 698]), because its case load precludes the pursuit of all such claims, any complainant who so wishes may bring a private court action. In these circumstance neither policy considerations nor equal protection concerns require that the administrative and judicial remedies be identical. To the contrary, the separate avenues justify different remedies. We recognized as much in *Commodore Home* where, having noted that "the FEHA leaves an aggrieved party on his own if the Department declines to pursue an administrative claim in his behalf," we stated that "[t]o limit the damages available in a lawsuit might substantially deter the pursuit of meritorious claims, . . ." (32 Cal.3d at pp. 220-221.)

Nor is an indigent complainant denied an equal opportunity to go to court. An eligible plaintiff may sue in forma pauperis (§ 68511.3, subd. (b); Cal. Rules of Court, rule 985; *Isrin* v. *Superior Court* (1965) 63 Cal.2d 153 [45 Cal.Rptr. 320, 403 P.2d 728]) and a complainant whose case is appropriate for the award of punitive damages is unlikely to have difficulty finding an attorney willing to serve on a contingent fee basis. Further, the court has discretion to award litigation expenses to the successful employee. (§ 12965, subd. (b).)

One recognized purpose of punitive damages is to make a civil action economically feasible. As one commentator has stated: "All serious misdeeds cannot possibly be punished by government prosecution. . . . [L]imited judicial and prosecutorial resources permit prosecution for only a fraction of the crimes and violations committed. For these reasons, individual members of society must play a significant role in instituting actions to impose sanctions for serious misconduct. Society's interest in bringing a wrongdoer to justice is especially strong where the wrongdoer's conduct exceeds all bounds of decency. [¶] The doctrine of punitive damages promotes this interest. By offering the potential for recovery in excess of actual

damages, the doctrine encourages plaintiffs to bring such actions. This is particularly important where actual damages are minimal. . . . Punitive damages thus can be characterized as a reward for the plaintiff's valuable role as a 'private attorney general.' Even where compensatory damages are substantial, an award of punitive damages helps to finance deserving claims by defraying the expenses of the action, such as attorneys' fees, that generally are not recoverable in American courts." (Mallor & Roberts, *Punitive Damages: Toward a Principled Approach* (1980) 31 Hastings L.J. 639, 649-650, fns. omitted.)

Moreover, in appropriate cases a complainant can seek punitive damages by filing an independent civil action alleging tort causes of action either with or without an FEHA count. (*Commodore Home, supra,* 32 Cal.3d at p. 220; see *Brown* v. *Superior Court, supra,* 37 Cal.3d at pp. 486-487; *Agarwal* v. *Johnson* (1979) 25 Cal.3d 932 [160 Cal.Rptr. 141, 603 P.2d 58]; cf. *Alcorn* v. *Anbro Engineering, Inc., supra,* 2 Cal.3d 493.) "The FEHA was meant to supplement, not supplant or be supplanted by, existing antidiscrimination remedies, in order to give employees the maximum opportunity to vindicate their civil rights against discrimination." (*State Personnel Bd.* v. *Fair Employment & Housing Com., supra,* 39 Cal.3d at p. 431, citing § 12993, subd. (a).)

Although Commission asserts that denying it authority to award punitive damages will impede the administrative resolution of cases, the converse may well be true. As we recognized in *Commodore Home,* "One basis for federal holdings under title VII is a fear that the availability of punitive damages might hamper the EEOC's efforts to resolve discrimination disputes by 'conference, conciliation, and persuasion.' [Citations.]" (32 Cal.3d at p. 217; cf. *Naton* v. *Bank of California* (9th Cir. 1981) 649 F.2d 691, 699 [same re pain and suffering damages under Federal Age Discrimination in Employment Act].) In *Rogers* v. *Exxon Research & Engineering Co.* (3d Cir. 1977) 550 F.2d 834, cited by the Ninth Circuit in *Naton, supra,* the court stated with respect to emotional distress damages: "While the existence of such an item of damages might strengthen the claimant's bargaining position with the employer, *it would also introduce an element of uncertainty which would impair the conciliatian process.* Haggling over an appropriate sum could become a three-sided conflict among the employer, the Secretary, and the claimant." (*Id.* at p. 841, italics added.) A fortiori the availability without limitation of punitive damages—usually a matter within the broad discretion of the jury after consideration of the defendant's wealth, the egregiousness of his conduct and the amount of the plaintiff's actual damages (see *Wetherbee* v. *United Ins. Co.* (1971) 18 Cal.App.3d 266, 270-272 [95 Cal.Rptr. 678]; BAJI No. 14.71 (7th ed. 1986); 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 867-869, pp. 3155-3158,

(1984 Supp.) §§ 869A-869B, pp. 553-557)—would introduce an element of uncertainty detrimental to the conciliation process.

Nor does effective conciliation require that the administrative and judicial remedies be identical. Rejecting such a contention in *Commodore Home, supra,* we stated: "We are not persuaded. In the first place there is no right to sue, even after conciliation breaks down, unless the Department fails to file an accusation before the Commission. To that extent the availability of court remedies remains within the Department's control. More importantly, the compliance structure of the FEHA encourages cooperation in the administrative process. While that process continues the Department acts on the victim's behalf and absorbs costs of pursuing his claim. Court action inevitably is speculative, and the FEHA makes civil suit the claimant's sole responsibility. That helps deter strategies of 'holding out' for court damages in inappropriate cases. Further, the possibility that an action might lead to punitive damages may enhance the willingness of persons charged with violations to offer fair settlements during the conciliation process. [Fn. omitted.]" (32 Cal.3d at p. 218.)

In short, Commission's policy and equal protection arguments are fallacious. If a complainant wants relatively prompt restitutionary redress free of personal financial risk he or she can elect the administrative avenue of relief, with all expenses paid by the department. (*State Personnel Bd.* v. *Fair Employment Housing & Com., supra,* 39 Cal.3d at p. 432.) If, however, the complainant prefers to seek the potentially more lucrative redress of punitive damages, he or she can go to court like any other litigant.

### III. CONCLUSION

In view of the foregoing, we conclude that the commission is not authorized to award punitive damages.[25] The Court of Appeal therefore erred in affirming the judgment of the trial court.

The judgment of the Court of Appeal is reversed. The Court of Appeal is directed to enter judgment reversing the trial court and directing it to issue a writ of mandate commanding Commission to vacate and set aside that part of its decision awarding Olander punitive damages and thereafter to take such further action not inconsistent with this opinion as it deems appropriate.

Lucas, C. J., Mosk, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.

---

[25] Because our disposition rests on statutory interpretation, we need not now address whether the power to award unlimited punitive damages could be lodged in an administrative tribunal and we express no opinion concerning the validity of legislation seeking to grant such authority.

BROUSSARD, J.—I dissent. I adopt part III of the well-reasoned opinion of the Court of Appeal (prepared by Justice Work and concurred in by Acting Presiding Justice Staniforth and Justice Wiener) as my own opinion, with a few alterations.[1]

Dyna-Med, [Inc. (Dyna-Med),] supported by amic[i] Merchants and Manufacturers Association (MMA) [and others],[2] set forth multiple challenges to the [Fair Employment and Housing] Commission's [(Commission)] authority to award punitive damages. In essence, they contend [the Fair Employment and Housing Act's (]FEHA [or act)] language and legislative history preclude awarding punitive damages at the agency level. They stress the statutory language, construed according to settled rules of statutory construction, does not empower the Commission to award punitive damages but limits it to remedial action designed to effectuate the underlying purposes of the act. Absent express legislative authorization, they argue it is the settled rule an administrative agency may not lawfully impose a penalty, whether civil or criminal in character.

Moreover, emphasizing the similarity between the language of title VII of the Federal Civil Rights Act of 1964 (title VII) and the FEHA, Dyna-Med relies on federal court precedent holding punitive damages are not available. Additionally, noting the housing discrimination provisions of the FEHA specifically authorize the Commission to order the payment of "punitive damages in an amount not to exceed one thousand dollars ($1,000)" ([Gov. Code,] § 12987, subd. (2) [all further statutory references are to the Government Code unless otherwise indicated]), it argues the express provision for such punitive damages in a parallel statutory scheme strongly suggests the omission of this remedy from the employment discrimination provisions was intentional. (See *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 225 (dis. [opn.]) [185 Cal.Rptr. 270, 649 P.2d 912].) Consequently, [Dyna-Med] contends that had the Legislature intended to allow recovery of extraordinary remedies such as punitive damages within the employment context, it could and would have expressly so provided. Dyna-Med asserts its construction is compelled by public policy, claiming injecting punitive damages within this administrative context furthers neither the general principle of equal employment opportunity, nor voluntary resolution and conciliation. Finally, [Dyna-Med] stress[es] that procedures

---

[1] Brackets together, in this manner [ ] *without enclosing material,* are used to indicate deletions from the opinion of the Court of Appeal; brackets *enclosing material* (other than editor's added parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. We thus avoid the extension of quotation marks within quotation marks, which would be incident to the use of such conventional punctuation, and at the same time accurately indicate the matter quoted. Footnotes in the Court of Appeal opinion have been renumbered sequentially.

[2] Future referrals to Dyna-Med's arguments in this opinion also include those of amic[i].

of administrative agencies often disregard traditional rules of evidence, severely limit discovery and are unfettered by safeguards insuring due process to litigants in the courts.

Applying the rules of construction summarized in *Honey Springs Home-owners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1136 [-1137], fn. 11 [203 Cal.Rptr. 886], we [must] interpret the FEHA to ascertain and effectuate the purpose of the law, attempting to give effect to the usual and ordinary import of the statutory language; harmonizing any provision within the context of the statutory framework as a whole; seeking a reasonable and commonsense interpretation consistent with the apparent legislative purpose and intent, practical rather than technical in character and upon application resultant of wise policy rather than absurdity; and, considering generally the context, the object in view, the evils to be remedied, the history of the times, legislation upon the same subject, public policy and contemporaneous construction.

The [Fair Employment Practice Act (]FEPA[)] was enacted in 1959 and recodified in 1980 as part of the FEHA. The FEHA sets forth a comprehensive scheme for combating employment discrimination, recognizing "the need to protect and safeguard the right and opportunity of all persons to seek and hold employment free from discrimination. (§ 12920.)" (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 485 [208 Cal.Rptr. 724, 691 P.2d 272].) The act declares that freedom from discriminatory practices in seeking, obtaining, and holding employment is a civil right. (§ 12921.) In fact, section 12920 recognizes "the practice of denying employment opportunity and discriminating [in] the terms of employment for such reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advance, and substantially and adversely affects the interest of employees, employers, and the public in general." Such discrimination is contrary to public policy (§ 12920) and is an unlawful employment practice (§ 12940). The express underlying purpose of the act is "to provide effective remedies which will eliminate such discriminatory practices." (§ 12920.) The Legislature has directed that the FEHA is to be construed "liberally" to accomplish its underlying purposes. (§ 12993.)[3]

The FEHA establishes the Department [of Fair Employment and Housing (the Department)] (§ 12901) to investigate, conciliate, and seek redress of claimed discrimination (§ 12930). Complaints (§ 12960) must be prompt-

---

[3] Generally, "[t]he purpose of the FEHA is to provide effective remedies for the vindication of constitutionally recognized civil rights, and to eliminate discriminatory practices on the basis of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex and age. (See §§ 12920, 12921; Cal. Const., art. I, § 8.)" (*State Personnel Bd.* v. *Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 432 [217 Cal.Rptr. 16, 703 P.2d 354].)

ly investigated (§ 12963). If it deems a claim valid, then it seeks to resolve the matter—in confidence—by conference, conciliation, and persuasion. (§ 12963.7.) If that fails or seems inappropriate the Department may issue an accusation to be heard by the Commission. (§§ 12965, subd. (a), 12969; see too § 12930.) The Commission then determines whether an accused employer, union, or employment agency has violated the act. If it finds a violation it must "issue . . . an order requiring such [violator] to cease and desist from such unlawful practice and to take such action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, and restoration to membership in any respondent labor organization, as, in the judgment of the commission, will effectuate the purposes of this part. . . ." (§ 12970, subd. (a).) If the Department fails to issue an accusation within 150 days after the filing of the complaint and the matter is not otherwise resolved, it must give complainant a right-to-sue letter. Only then may that person sue in the superior court under the FEHA (§ 12965, subd. (b)).[4] (See *Commodore Home Systems, Inc.* v. *Superior Court, supra,* 32 Cal.3d 211, 213-214; *Snipes* v. *City of Bakersfield* (1983) 145 Cal.App.3d 861, 865-868 [193 Cal.Rptr. 760]; see also *State Personnel Bd.* v. *Fair Employment & Housing Com., supra,* 39 Cal.3d 422, 432 [-433].)[5]

[My] conclusion [that] the Commission is empowered to award punitive damages arises from the statutory authority summarized above. It is undisputed an administrative agency's power to award such damages must arise from express statutory authorization. Here, the Legislature delegated broad authority to the Commission to fashion appropriate remedies for unlawful employment practices in section 12970, subdivision (a): "If the commission finds that a respondent has engaged in any unlawful practice under this

---

[4] However, the court in *Commodore Home Systems, Inc.* v. *Superior Court, supra,* noted: "Declarations by the Director and the general counsel of the Department advise that right-to-sue letters are the rule, not the exception, because the Department rarely is able to complete investigations, pursue conciliation, and issue accusations within the 150-day period. For that reason, a right-to-sue letter is issued, even in advance of 150 days, to any person who states in writing that he wants to withdraw his complaint and file a civil action. We express no opinion on the propriety of that practice. . . ." (32 Cal.3d at p. 218, fn. 8.)

[5] In 1980, the Commission adopted a regulation providing that "[w]hile normal monetary relief shall include relief in the nature of back pay, reasonable exemplary or compensatory damages may be awarded in situations involving violations which are particularly deliberate, egregious or inexcusable." (Cal. Admin. Code, tit. 2, § 7286.9, subd. (c).) The Commission clarified the meaning of this regulation in its precedential decision, *D.F.E.H.* v. *Ambylou Enterprises* (1982) F.E.H.C. Dec. No. 82-06 at pages 8, 9-17, where it adopted the standards normally applied by the courts in assessing exemplary and compensatory damages. It was, however, repealed on May 16, 1985 (effective 30th day thereafter, Cal. Admin. Register 85, No. 20) to eliminate the articulated "incorrect" legal standard for awarding exemplary or compensatory damages. The repeal was not intended to affect the Commission's authority to award such relief in appropriate cases as derived from the FEHA. (Cal. Admin. Code, tit. 2, § 7286.9, Cal. Admin. Code. Supp., Register 85, No. 20, p. 134.)

part, it . . . shall issue and cause to be served on the parties an order requiring such respondent . . . to take such action, *including, but not limited to,* hiring, reinstatement or upgrading of employees, with or without back pay, and restoration to membership in any respondent labor organization, *as, in the judgment of the commission, will effectuate the purposes of this part,* and including a requirement for report of the manner of compliance." (Italics added.) Attempting to harmonize this specific provision in context of the entire statutory framework, [I] find in section 12920 the underlying purpose of the act is to provide effective remedies to eliminate discriminatory employment practices. Consequently, considering the legislative mandate to liberally construe the act to further these purposes (§ 12993), [I] conclude it has statutorily authorized the Commission to impose punitive damages where necessary to effectively remedy and eliminate unlawful FEHA employment practices. For, the Commission "may exercise such additional powers as are necessary for the due and efficient administration of powers expressly granted by statute, or as *may fairly be implied* from the statute granting the powers. [Citations.]' " (*Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 617 [200 Cal.Rptr. 575] [quoting *Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 810 (151 P.2d 505, 157 A.L.R. 324)].)

Contrary to Dyna-Med's assertions, imposing punitive damages for deliberate violations is designed to effectively eliminate discriminatory employment practices. Potential liability for punitive damages is a substantial incentive for employers to eliminate, or refrain from committing, unlawful employment practices. Further, the possibility of "punitive damages may enhance the willingness of persons charged with violations to offer fair settlements during the conciliation process. [Fn. omitted.]" (*Commodore Home Systems, Inc.* v. *Superior Court, supra,* 32 Cal.3d 211, 218.) Moreover, such damages are designed not only to punish the wrongdoer, but also to set an example to deter others from similar conduct.

The facts of this case prove ordinary restitutionary remedies are often ineffective in eliminating discriminatory practices. Awards of back pay are frequently insignificant because interim earnings are deducted or offset. Also, the value of reinstatement may be negligible because by the time employment discrimination cases are resolved, the plaintiff has had to find another job. Upgrading, back pay and reinstatement in cases of retaliation may not be effective deterrents or satisfactory remedies for complainants because the original work environment may no longer be conducive to continued employment. Consequently, in light of the limited remedial effect of these permissible compensatory remedies, the award of punitive damages may be the only method of fulfilling the purposes of the act, including encouraging plaintiffs to seek relief by increasing their potential recovery

(see *Claiborne* v. *Illinois Central Railroad* (E.D.La. 1975) 401 F.Supp. 1022, 1026, affd. in part and vacated in part (5th Cir. 1978) 583 F.2d 143).

Although the language of section 12970, subdivision (a) is broad enough to encompass the award of punitive damages, Dyna-Med challenges this construction, claiming the statutory construction doctrines of *ejusdem generis*,[6] *expressio unius est exclusio alterius*,[7] and *noscitur a sociis*[8] compel a narrow interpretation limiting the Commission to ordering only affirmative, equitable, remedial relief.

Dyna-Med argues applying the doctrine of *ejusdem generis* to section 12970, subdivision (a) requires the authorizing language to be viewed in the light of the limited nature of the remedies specifically listed before the general language. In other words, because the only remedy enumerated involving the award of monetary or legal relief is the awarding of backpay [*sic*], it concludes the general remedy language may not be construed to expand the authorized remedies to embrace punitive damages, because the phrase is limited by specific examples of the relief available, all of which are traditional "make-whole" remedies. It asserts the same result is arrived at by employing the other cited rules of statutory construction, because the Legislature demonstrated an intent not to authorize the exercise of any additional power unequivocally empowering the Commission to take affirmative action and then listing examples of such affirmative "make-whole" relief.

Properly analyzed, these rules do not sustain Dyna-Med's proffered statutory construction. These principles are mere guides to determining legislative intent and will not be applied to defeat the underlying legislative intent. (*Cal. State Employees' Assn.* v. *Regents of University of California* (1968) 267 Cal.App.2d 667, 670 [73 Cal.Rptr. 449]; *Claiborne* v. *Illinois Central Railroad, supra,* 401 F.Supp. 1022, 1026.) Moreover, in evaluating legisla-

---

[6] " '[T]he doctrine of *ejusdem generis* . . . states that where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage.' " (*Sears[,] Roebuck & Co.* v. *San Diego County Dist. Council of Carpenters* (1979) 25 Cal.3d 317, 331, fn. 10 [158 Cal.Rptr. 370, 599 P.2d 676], quoting *Scally* v. *Pacific Gas & Electric Co.* (1972) 23 Cal.App.3d 806, 819 [100 Cal.Rptr. 501].)

[7] *Expressio unius est exclusio alterius* means that "the expression of certain things in a statute necessarily involves exclusion of other things not expressed. . . ." (*Henderson* v. *Mann Theatres Corp.* (1976) 65 Cal.App.3d 397, 403 [135 Cal.Rptr. 266].)

[8] Under the rule of *noscitur a sociis*, " 'the meaning of a word may be enlarged or restrained by reference to the object of the whole clause in which it is used.' " (*People* v. *Stout* (1971) 18 Cal.App.3d 172, 177 [95 Cal.Rptr. 593], quoting Vilardo v. County of Sacramento (1942) 54 Cal.App.2d 413, 420 [129 P.2d 165].)

tive intent from first gleaning the language of the statute, we should seek to avoid making any language mere surplusage and thus rendered useless. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *Guelfi* v. *Marin County Employees' Retirement Assn.* (1983) 145 Cal.App.3d 297, 305 [193 Cal.Rptr. 343].) Applying the proffered rules of statutory construction effectively deprives the phrase "including but not limited to" of any meaning, when in fact it evinces clear legislative intent to expand, not limit, the list of remedies. (See *America National Ins. Co.* v. *Fair Employment & Housing Com.* (1982) 32 Cal.3d 603, 611 [186 Cal.Rptr. 345, 651 P.2d 115] (dis. opn.); *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1977) 69 Cal.App.3d 884, 890 [138 Cal.Rptr. 509].)

Dyna-Med next argues the underlying legislative history of the FEHA, and specifically section 12970, shows the Commission did not intend to allow punitive damages. It argues the FEHA was modeled after the remedy language of the National Labor Relations Act (NLRA) which has been interpreted as not permitting punitive damages; the FEHA authorizes "affirmative action including (but not limited to)" similar to the NLRA which has been construed by the courts as authorizing only remedial relief; and the Legislature's enactment of a parallel statutory scheme relating to housing discrimination expressly providing for punitive damages suggests the omission of this remedy from the employment discrimination provisions was intentional.

The cited language of subdivision (a) of section 12970 appeared originally in former Labor Code section 1426, adopted in 1959 as part of the FEPA, which was later recodified and substantially reenacted in section 12970, subdivision (a). Without question, the phrase in dispute resembles section 10(c) of the NLRA (29 U.S.C.A. § 151 et seq., § 160(c)), which directs the National Labor Relations Board (NLRB) upon a finding of an unfair labor practice to issue a cease and desist order requiring the violator to "take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of [the Act]. . . ." This language in 1938 was interpreted by the United States Supreme Court as not allowing punitive damages. (*Edison Co.* v. *Labor Board* (1938) 305 U.S. 197, 235-236 [83 L.Ed. 126, 143, 59 S.Ct. 206, 219-220].)[9]

---

[9] In *Edison* the Supreme Court stated: "That section [29 U.S.C. § 160(c)] authorizes the Board, when it has found the employer guilty of unfair labor practices, to require him to desist from such practices 'and to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this Act.' [ ] We think that this authority to order affirmative action does not go so far as to confer punitive jurisdiction enabling the Board to inflict upon the employer any penalty it may choose because he is engaged in unfair labor practices, even though the Board [ ] be of the opinion that the policies of the Act might be effectuated by such an order.

In 1969, the word "affirmative" preceding the word "action" was removed from section 12970, subdivision (a). (Stats. 1969, ch. 526, § 1, p. 1142.)[10] Because this language was not otherwise modified in any relevant manner by the Legislature, Dyna-Med relies on federal precedent construing the NLRA as well as title VII of the Federal Civil Rights Act of 1964 which contains similar language within section 706(g), authorizing the trial court to enjoin intentional violations of the Civil Rights Act and to "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate. . . ." (42 U.S.C. § 2000e-5(g).)[11] Its reliance on federal precedent is misplaced.[12]

Critical differences between the NLRA and the FEHA convince [me] the federal precedent is not apposite. (See, e.g., *Edison Co.* v. *Labor Board, supra,* 305 U.S. 197, 235-236 [83 L.Ed. 126 [143, 59 S.Ct. 206, 219-220]]; see also *Pearson* v. *Western Elec. Co., etc.* (10th Cir. 1976) 542 F.2d 1150, 1152; *Van Hoomissen* v. *Xerox Corporation* (N.D.Cal. 1973) 368 F.Supp. 829, 837.) Granted, "[w]hen legislation has been judicially construed and a subsequent statute on the same or an analogous subject is framed in the identical language, it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would

"The power to command affirmative action is remedial, not punitive, and is to be exercised in aid of the Board's authority to restrain violations and as a means of removing or avoiding the consequences of violation where those consequences are of a kind to thwart the purposes of the Act." (305 U.S. 197, 235-236 [83 L.Ed. 126, 143]; *Commodore Home Systems, Inc.* v. *Superior Court, supra,* 32 Cal.3d 211, 224 (dis. opn.).)

[10] The Attorney General notes the apparent reason for this change was to distinguish the "action" which the Commission could order from the narrow definition of "affirmative actions" as educational and promotional activities which was added to FEHA's predecessor statute in 1967. (See former Lab. Code, § 1413, subd. (g), added by § 5 of Stats. 1967, ch. 1506, § 1, at p. 3573.) This construction is also proffered by Dyna-Med and amicus MMA. Because [I] do not rely on that legislative modification, [I] do not comment on the correctness of that assertion.

[11] "The authority of courts to grant relief in actions brought under the Equal Employment Opportunity Act of 1972 is governed by the same statutory provision which applies in actions under Title VII of the Civil Rights Act of 1964 [(]42 U.S.C. § 2000e-5(g).[)] [Fn. omitted.] [That section] authorizes courts to order 'such affirmative action as may be necessary' to remedy unlawful employment practices." (*Richerson* v. *Jones* (3d Cir. 1977) 551 F.2d 918, 923.)

[12] [I am] aware the majority in *Commodore Home Systems, Inc.* v. *Superior Court, supra,* 32 Cal.3d 211, 217, when determining that the FEHA does not limit the relief a court may grant in a statutory suit charging employment discrimination and that all relief generally available in noncontractual actions, including punitive damages may be obtained in such a civil action under the FEHA, noted differences between the NLRA as well as section 706(g) of title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-5(g)) which diminish the weight of federal precedent interpreting the federal statutes as not authorizing awards of either general compensatory or punitive damages. However, because [I] believe the [distinctions] in *Commodore* rested substantially on the precise context of the issue the court was reviewing (i.e., the separate and distinct route to resolution of claims through private court action, and not administrative relief), [I] do not rely on [them] here.

be given a like interpretation. This rule is applicable to state statutes which are patterned after the federal statutes. [Citations.]' " (*Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 557 [147 Cal.Rptr. 165, 580 P.2d 665], quoting *Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 688-689 [8 Cal.Rptr. 1, 355 P.2d 905]; *Union Oil Associates* v. *Johnson* (1935) 2 Cal.2d 727, 734-735 [43 P.2d 291, 98 A.L.R. 1499].) However, this recognized principle of statutory construction rests upon the predicate the latter statute involved the same or an analogous subject which has similar [or] identical language. Here, the subjects are not analogous. The underlying purposes of the NLRA and the FEHA (or FEPA) differ. The former exists to prevent industrial unrest and strife or, in other words, to promote industrial peace (*Carey* v. *Westinghouse Corp.* (1964) 375 U.S. 261, 271 [11 L.Ed.2d 320, 328, 84 S.Ct. 401]), while the latter exists to eliminate specific discriminatory practices (*State Personnel Bd.* v. *Fair Employment & Housing Com., supra,* 39 Cal.3d 422, 432). More specifically, the NLRA regulates and encourages collective bargaining between employers and employees (*Carey* v. *Westinghouse Corp., supra,* 375 U.S. at p. 271 [11 L.Ed.2d at p. 328, 84 S.Ct. at p. 409]; *N.L.R.B.* v. *Pincus Bros., Inc.-Maxwell* (3d Cir. 1980) 620 F.2d 367, 376; *Bloom* v. *N.L.R.B.* (D.C. Cir. 1979) 603 F.2d 1015, 1019), while the FEHA makes employment discrimination against certain enumerated groups illegal. The former is designed to protect the rights of workers to organize into bargaining units and to create a cooperative atmosphere of recognition between labor and management. (See *N.L.R.B.* v. *Knuth Bros., Inc.* (7th Cir. 1976) 537 F.2d 950, 957.) On the other hand, the latter is designed to protect the individual's constitutional right to be free from discrimination within the employment setting (*State Personnel Bd.* v. *Fair Employment & Housing Com., supra,* 39 Cal.3d at p. 432), not to create a spirit of cooperation between labor and management. Instead, the FEHA was designed to provide an efficient administrative remedy to enforce an employee's right to be treated equally and to insure employers refrain from committing discriminating employment practices. Moreover, the NLRA does not provide a claimant with an analogous right to independently pursue an unfair labor practices claim in the courts upon administrative default or issuance of a right-to-sue letter, while the FEHA provides both judicial and administrative remedial procedures, requiring sensitivity to consistency in available relief.[13]

---

[13] While comparing the NLRA with title VII, the court in *Claiborne* v. *Illinois Central Railroad, supra,* 401 F.Supp. 1022, 1024-1025, aptly explained: "Moreover, the aim of the N.L.R.A. was to establish a framework within which management and labor could resolve their conflicts, whether by collective bargaining or economic warfare, *e.g.,* strikes and lockouts. The N.L.R.A. was not meant to be outcome determinative, *i.e.,* it was not to ensure that management or labor wins every conflict. It simply defined permissible methods of engaging in industrial conflict and sought to channel labor/management conflict into peaceful negotiations. Title VII is radically different. It seeks to end all employment discrimination. It does

Dyna-Med's reliance on title VII cases is similarly misplaced. (See, e.g., *Shah* v. *Mt. Zion Hospital & Medical Ctr.* (9th Cir. 1981) 642 F.2d 268, 272; *DeGrace* v. *Rumsfeld* (1st Cir. 1980) 614 F.2d 796, 808; *Richerson* v. *Jones, supra,* 551 F.2d 918, 926; *Pearson* v. *Western Electric Co., supra,* 42 F.2d 1150, 1152.) 42 United States Code section 2000e-5(g) of title VII significantly provides: "[T]he court may . . . order such affirmative action as may be appropriate, which may include, but is not limited to, . . . *or any equitable relief* as the court deems appropriate." (Italics added.) Several decisions have focused on this phrase "any other equitable relief" in determining that punitive damages are not awardable, for they are traditionally not available in equity. (See *Shah* v. *Mt. Zion Hospital & Medical Ctr., supra,* 642 F.2d 268, 272,; *Miller* v. *Texas State Bd. of Barber Examiners* (5th Cir. 1980) 615 F.2d 650, 654; *Richerson* v. *Jones, supra,* 551 F.2d 918, 927.) Consequently, these courts have understandably held the explicit reference to *equitable,* and the silence with regard to *legal,* relief suggests the unavailability of punitive damages under title VII. In contrast, the FEHA expressly empowers the Commission to take whatever *action* is necessary to effectuate its policies, without an express limitation to equitable relief or complete silence as to legal relief. The absence of such qualifying language

---

not define permissible methods of discrimination nor does it establish a framework allowing for employment discrimination. Its aim is to be outcome determinative and to see that employees who are discriminated against win every conflict.

"Punitive damages under the N.L.R.A. are inappropriate because they would only serve to exacerbate conflict between management and labor within the permissible sphere of industrial conflict, *i.e.,* strikes and lock-outs. The party assessed punitive damages could seek revenge in the next strike or be recalcitrant at the bargaining table. This would undermine the spirit of cooperation that is necessary for good-faith collective bargaining and the peaceful resolution of industrial conflicts. Such revenge seeking would be almost impossible to prove unless the party accused of it stated this was a reason for its action. Punitive damages might also create a sense of moral superiority in the side receiving them, discouraging that side from negotiating and avoiding strikes because it felt it was 'right.' Furthermore, punitive damages might permit the N.L.R.B. to destroy the equality of power between management and labor that Congress intended to create by the N.L.R.A. [(]Note, Tort Remedies for Employment Discrimination Under Title VII, 54 Va.L.Rev. 491, 502 (1968).[)]

"No such dangers exist under Title VII. Employment discrimination is not negotiable so there is no negotiating process to undermine. Where there is employment discrimination, there is no equality of power to be maintained, since employment discrimination is absolutely prohibited. Finally, there is no permissible area of conflict where revenge for punitive damages might be sought. Indeed, the possibility of punitive damages under Title VII should encourage an end to employment discrimination [. . .]. Accordingly, the profoundly different aims of Title VII and the N.L.R.A. should lead to a different, not similar, decision on punitive damages."

Upon reviewing the *Claiborne* court's decision, the Fifth Circuit stated: "Without approving or disapproving the lower court's resolution of the Title VII issue, its discussion of Title VII and the different purposes of the Civil Rights Act as compared to the [NLRA] . . . is fully persuasive that an award of punitive damages does not so conflict with the purpose embodied in Title VII that it should be disallowed in a combined [Title VII and 42 United States Code section 1981] suit." (*Claiborne* v. *Illinois Cent. R.R.* (5th Cir. 1978) 583 F.2d 143, 154.)

and complete silence regarding legal damages in the FEHA further dissuades [me] from following the cited federal precedent.[14]

[ ][T]he FEHA provides alternative avenues of relief through either the administrative or the judicial process. As already explained, both procedures commence with the filing of a complaint with the Department. (§ 12960.) Under the judicial route, a complainant receives a right-to-sue notice and files an action in court. (§ 12965, subd. (b).) Under the administrative route, the Department investigates the complaint (§ 12963), conducts discovery (§§ 12963.1-12963.5), attempts conciliation (§ 12963.7), files an accusation with the Commission (§ 12965, subd. (a)), and presents the case to the Commission (§ 12969). The decision, however, whether to go to court does not rest with the claimant. Rather, the Department has exclusive jurisdiction over the case for 150 days (§§ 12960, 12965, subd. (b)), and must give a right-to-sue letter to the claimant if an accusation is not issued within the time period before the claimant may file a court action. However, although this private right of action under section 12965, subdivision (b), appears to be contingent upon the Department's decision not to prosecute or the lapse of 150 days, "[a]s a practical matter . . . parties who intend to pursue their case in court are given 'right to sue' letters in every case, even

---

[14] Amicus MMA contends the title VII cases are not distinguishable here because of the inclusion of the term "equitable" in the remedies section of the statute, citing the remedy language contained in the Federal Age Discrimination [in] Employment Act (ADEA) (29 U.S.C. § 621 et seq.). 29 United States Code section 626(b) pertinently provides: "In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section. . . ."

MMA notes that every circuit court which has considered the issue of whether the ADEA permits the disposition of punitive and pain and suffering damages has held in the negative. (See *Slatin* v. *Stanford Research Institute* (4th Cir. 1979) 590 F.2d 1292; *Vazquez* v. *Eastern Air Lines, Inc.* (1st Cir. 1978) 579 F.2d 107; *Dean* v. *American Sec. Ins. Co.* (5th Cir. 1977) 559 F.2d 1036; *Rogers* v. *Exxon Research & Engineering Co.* (3d Cir. 1977) 550 F.2d 834; *Naton* v. *Bank of California* (9th Cir. 1981) 649 F.2d 691.) In deciding pain and suffering or punitive damages are not necessary to effectuate the purposes of the ADEA, the *Dean* and *Rogers* v. *Exxon* cases rely heavily on the provision for liquidated damages in cases of willful violations of the ADEA. (*Rogers* v. *Exxon, supra,* at p. 840; *Dean* v. *American Sec. Ins. Co., supra,* at p. 1039.) After reviewing the legislative history, *Dean* states the sponsor of the bill "held the view that [ ] liquidated damages could effectively supply the deterrent and punitive damages which both criminal penalties and punitive damages normally serve. [Fn. omitted.]" (*Id.,* at p. 1040.) There is no analogous provision specifying the type of damages that can be awarded in cases of willful violations in the FEHA, and thus we do not find the ADEA cases controlling. I note that although three of the courts (*Rogers, supra,* at [p. 841]; *Naton, supra,* at p. 699, and *Slatin, supra,* at p. 1296) expressed concern that pain and suffering damages would negatively impact the conciliation process, the court in *Vazquez, supra,* 579 F.2d 107, expressly rejected the proposition, concluding that a contrary result might be so logically reached (i.e., the employer might be less likely to compromise a claim if he knows no pain and suffering damages can be awarded against him). (*Id.,* at p. 111.)

in advance of the 150-day limit." (*State Personnel Bd.* v. *Fair Employment & Housing Com., supra,* 39 Cal.3d 422, 433, fn. 11.) Where the Department decides to administratively handle the case, the complainant may not pursue a civil action. (See generally *Snipes* v. *City of Bakersfield, supra,* 145 Cal.App.3d 861, 865-868.) In essence, this administrative process was designed to be supported completely by the Department's own staff of investigators, attorneys and other personnel to prosecute the alleged violation rather than bestowing that responsibility upon a complainant. (See [*State Personnel Bd., supra*], at p. 432.) In fact, the [L]egislature originally provided for only the administrative route and later added the judicial avenue of relief, but retained the former apparently to highlight its intent the administrative process was designed to handle the bulk of the cases and its belief the administrative process would operate effectively to eliminate employment discrimination. Indeed, "[t]he FEPC has been entrusted with the duty of effectuating the declared policy of the state to protect and safeguard the rights and opportunities of all persons to seek, obtain and hold employment without discrimination." (*Northern Inyo Hosp.* v. *Fair Emp. Practice* [] *Com.* (1974) 38 Cal.App.3d 14, 25 [112 Cal.Rptr. 872].)

In *Commodore Home Systems, Inc.* v. *Superior Court, supra,* 32 Cal.3d 211, 221, this [] Court held compensatory and punitive damages are available to persons who "elect" the judicial avenue of relief under the FEHA.[15] Thus, an anomaly arises if punitive damages are not likewise available within the administrative avenue of relief. As Justice Richardson pointed out in his dissent in *Commodore, supra,* at pages 222-223, "it would be wholly anomalous to allow punitive damages to accusors [*sic*] who have been unsuccessful administratively before the commission, but to deny such damages to those whose claims have been successfully established. The result of any such disparity of remedy would be to encourage [claimants to file insufficient or inadequate] complaints with the commission in order to avoid or circumvent administrative proceedings in the hope of obtaining punitive damages in subsequent civil actions. Such a consequence would be contrary to FEHA's policy of eliminating employment discrimination through administrative 'conference, conciliation, and persuasion.' (Gov. Code, § 12963.7, subd. (a).)" Moreover, given the substantial volume of complaints received by the Department, if it pursued only the strongest cases with the most egregious FEHA violations, then ironically claimants with weaker cases who could afford to pursue judicial action would have access to compensatory and exemplary damages while stronger cases heard by the Commission would not. A construction permitting this would defeat

---

[15] The question whether the Commission can award compensatory and punitive damages was expressly reserved[.] [] (*Commodore Home Systems Inc.* v. *Superior Court, supra,* 32 Cal.3d 211, [215, 220]; *State Personnel Bd.* v. *Fair Employment & Housing Com., supra,* 39 Cal.3d 422, 429, 434, fn. 12.)

an underlying purpose for administrative relief, to wit, to provide an administrative scheme and forum for complainants to vindicate their employment rights, regardless of economic status. Indeed, public policy prohibiting employment discrimination practices cannot permit an individual claimant's affluence to determine whether he/she is entitled to effective relief. Absent the availability of similar relief, it is inevitable that equal protection violations will occur.[16]

Moreover, if the Commission is prohibited from awarding punitive damages while courts are free to do so, the underlying purposes of the administrative avenue of adjudication will be undermined. The Commission was created to interpret and implement the act and concomitantly to develop expertise in employment discrimination practices in California. (See § 12935; see generally *State Personnel Bd.* v. *Fair Employment & Housing Com., supra,* 39 Cal.3d 422, 432.) By establishing an administrative avenue of relief in the Commission with such expertise, the FEHA is designed to promote efficient resolution of discrimination complaints while removing additional pressure from the state's overburdened judicial system. In fact, if the Commission was prohibited from awarding punitive damages while the courts were free to do so, the Department might forego seeking administrative relief, thus delaying any relief and embroiling the discriminated person in unwanted courtroom proceedings. Further, this affects the fulfillment of the Department's role in that particular case with regard to conference, conciliation and persuasion efforts to resolve the dispute. [I] believe [this] construction [ ] provides "a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity." (*Honey Springs Homeowners Assn.* [*, Inc.*] v. *Board of Supervisors, supra,* 157 Cal.App.3d 1122, 1136, fn. 11; *United Business Com.* v. *City of San Diego* (1979) 91 Cal.App.3d 156, 170 [154 Cal.Rptr. 263].)

Further, the Commission is authorized to interpret the FEHA both by regulation (§ 12935, subd. (a)(1)) and a system of precedential opinions

---

[16] The depth of the impact of the possibility of disparity in available remedies is far greater than initially meets the eye with regard to the indigent or less sophisticated claimants who cannot mount or sustain a lengthy civil action. Those individuals will be denied an opportunity to obtain an award of punitive damages solely because of their economic or social circumstances. Not only is this distinction among claimants irrelevant, but it is contrary to the Legislature's intent to eliminate employment discrimination, and violates the basic principles of equal protection. Unfortunately, economic status is often strongly correlated to race, sex, and various other forms of discrimination prohibited by the FEHA. If such victims of employment discrimination, often unemployed at the time they seek relief, cannot obtain full relief through the administrative proceedings made available to them, then in essence the FEHA will foster discrimination rather than eliminate it as judicial relief to this class is not economically feasible. The Legislature intended to create an expeditious, complete, administrative remedy, not an inferior mode of relief occasionally available to the unfortunate.

(§ 12935, subd. (h)). Although the ultimate interpretation of a statute rests with the courts, consistent administrative construction of a statute over many years, particularly when it originated with those charged with putting the statutory machinery into effect and enforcing it, is entitled to great weight and will be followed unless clearly erroneous. (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 491 [156 Cal.Rptr. 14, 595 P.2d 592]; *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]; *De Young* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].) [ ] [I]n 1980, the Commission promulgated title 2, California Administrative Code section 7286.9, subdivision (c) providing: "While normal monetary relief shall include relief in the nature of back pay, reasonable exemplary or compensatory damages may be awarded in situations involving violations which are particularly deliberate, egregious or inexcusable." Although this regulation was repealed in 1985 as setting forth an incorrect and misleading standard, the Commission held in *D.F.E.H.* v. *Ambylou Enterprises, Inc.* (1982) F.E.H.C. Dec. No. 82-06), compensatory and punitive damages are available under the FEHA (*id.,* at p. 8); punitive damages are designed to punish a wrongdoer and provide an example to deter others from similar conduct as are permissible in a court of law (*id.,* at p. 13); and the availability of such damages is governed by Civil Code section 3294. (*Id.,* at p. 13.) In *D.F.E.H.* v. *Fresno Hilton Hotel* (1984) F.E.H.C. Dec. No. 84-03, app[eal] pending[ ], the Commission held that under section 12970, subdivision (a), it could award both compensatory (*id.,* at pp. 34-36) and punitive (*id.,* at pp. 36-40) damages. The Commission declared: "The purpose of awarding punitive damages is to punish or [ ] make an example of respondent, when it [has] engaged in, condoned, or ratified conduct which is oppressive, fraudulent or malicious. (Civ. Code, § 3294)" (*Id.,* at p. 37; see also *D.F.E.H.* v. *Donald Schriver, Inc.* (1984) F.E.H.C. Dec. No. 84-07, app. pending, declaring the Commission is authorized to award punitive damages (*id.,* at [p.] 18) [ ] follow[ing] the judicial standard set forth in Civ. Code, § 3294 (*id.,* at pp. 18-22).)

Since the Commission first interpreted section 12970, subdivision (a) in 1980, the Legislature has amended the FEHA on numerous occasions without addressing the language in dispute regarding the Commission's authority to award appropriate effective relief. "[W]here the Legislature has failed to modify the statute so as to require an interpretation contrary to the regulation, that fact may be considered to be an indication that the ruling was consistent with the Legislature's intent." (*Action Trailer Sales, Inc.* v. *State Bd. of Equalization* (1975) 54 Cal.App.3d 125, 133-13[4] [126 Cal.Rptr. 339]; see also *Coca-Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 922 [156 P.2d 1].)

Dyna-Med relies upon a bill introduced but not enacted by the Legislature in 1976 (Assem. Bill No. 3124) (2 Assem. Final Hist. (1975-1976 Reg. Sess.) p. 1658) which would have expressly authorized the Commission to award damages in employment discrimination cases in an amount not to exceed $500.[17] [Dyna-Med's] reliance on proposed, but unpassed legislation is misplaced. (*National Elevator Services, Inc.* v. *Department of Industrial Relations* (1982) 136 Cal.App.3d 131, 141 [186 Cal.Rptr. 165]; *Miles* v. *Workers' Comp. Appeals Bd.* (1977) 67 Cal.App.3d 243, 248, fn. 4 [136 Cal.Rptr. 508]; *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 58 [69 Cal.Rptr. 480]; see *United States* v. *Wise* (1962) 370 U.S. 405, 411 [8 L.Ed.2d 590, 594-595, 82 S.Ct. 1354].)

Dyna-Med next argues the express authorization in section 12987, subdivision (2) for the Commission to award actual and punitive damages up to $1,000 in housing discrimination cases and the omission of a similar provision in the employment discrimination provisions of the FEHA, suggests the Legislature did not intend punitive damages be available to remedy discriminatory employment practices. It further notes this distinction exists between the federal fair housing and fair employment statutes causing the courts to hold a specific punitive damage provision in the former implies punitive damages are not available under the employment provisions. (See tit. VIII of the Civil Rights Act, 42 U.S.C. § 3612(c), relating to fair housing which specifically permits recovery up to $1,000 in punitive damages in comparison to the absence of any corresponding authorization for punitive damages in tit. VII; see, e.g., *Richerson* v. *Jones, supra,* 551 F.2d 918, 927-928.) Accordingly, it contends that had the Legislature intended to empower the Commission to award punitive damages, it would have [ ] so [provided as] it had [ ] in parallel legislation. Again, [I am] unpersuaded.

In 1959, when the FEPA was enacted, the Legislature also enacted the Hawkins Act (former Health & Saf. Code, § 35700 et seq., enacted by Stats. 1959, ch. 1681, § 1, p. 4074), prohibiting housing discrimination [in publicly assisted housing], and the Unruh Civil Rights Act (enacted by Stats. 1959, ch. 1866, §§ 1-4, p. 4424; Civ. Code, § 51 et seq.), prohibiting discrimination in business establishments. In 1963, the Hawkins Act was replaced by the Rumford Fair Housing Act (former Health & Saf. Code, § 35700 et seq., enacted by Stats. 1963, ch. 1853, §§ 1-2, p. 3823). The Hawkins Act originally permitted complainants to sue for the award of damages of not

---

[17]The Legislature attempted in 1983-1984 to amend section 12970, subdivision (a) to specifically authorize compensatory and punitive damages as "declaratory of existing law" in Senate Bill No. 2012; however, this language was removed before its enactment. (Stats. 1984, ch. 1754, § 3, p. 6406.)

During the 1981-1982 legislative session, the Legislature twice declined to enact statutes which would have prohibited the Commission from awarding punitive damages in Senate Bill No. 516 and Assembly Bill No. 879.

less than $500. (Former Health & Saf. Code, § 35730.) However, in 1963 when the Hawkins Act was replaced by the Rumford Act (Stats. 1963, ch. 1853, § 2, p. 3823 et seq.), the Commission was empowered to order a violator to pay damages (not exceeding $500) if the Commission determined certain other delineated remedies were not available (*id.,* at pp. 3828-3829). In 1975, the maximum damage award was increased to $1,000. (Stats. 1975, ch. 280, § 1, p. 701.) In 1977, the Commission was authorized to order such action by a violator as deemed appropriate to serve the law, including, but not limited to the sale or rental of the same or similar housing, the provision of nondiscriminatory purchase, rental and financing terms, and "[t]he payment of actual and punitive damages" not exceeding $1,000 (Stats. 1977, ch. 1187, § 10, p. 3893; ch. 1188, § 13.1, pp. 3905-3906). Essentially, this statutory scheme was then carried into the FEHA when the employment and housing statutory schemes were combined.

As the foregoing history illustrates, although both the housing and employment discrimination statutes are now contained within a single act, the FEHA, they followed different legislative routes of treatment resulting in totally separate, original enactments. The Legislature has consistently placed limitations on remedies available in the housing context while at the same time granting the Commission broad discretion to fashion appropriate awards in the employment context. Consequently, because the limitation on recovery within the housing context in section 12987, subdivision (2) expressly notes punitive damages only to limit the availability of such damages, the absence of any express reference to such damages in section 12970, subdivision (a) within the employment context should not be construed as a lack of authority, but rather a lack of statutory limitation on such damages.

Further, [this] construction of the FEHA coincides with public policy. The public commitment to eliminate discrimination as explicitly set forth in section 12920 and characterized as a civil right in section 12921, is constitutionally guaranteed by article I, section 8 of the California Constitution. Section 8 provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin." "The right to work and the concomitant opportunity to achieve economic security and stability are essential to the pursuit of life, liberty and happiness." (*Sail'er Inn* [, *Inc.*] v. *Kirby* (1971) 5 Cal.3d 1, 17 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].)

Dyna-Med next contends the absence of procedural safeguards existing within the judicial system requires a conclusion punitive damages not be available in administrative proceedings. [I] recognize there may be differences in general procedure, rules of evidence, discovery, etc. However, the Commission is expressly permitted to award punitive damages in hous-

ing discrimination cases. Moreover, both the Administrative Procedure Act (APA) (§ 11500 et seq.) and Code of Civil Procedure section 1094.5 provide procedural protections to insure due process concerns are satisfied. [ ] ([See] *American National Ins. Co.* v. *Fair Employment & Housing Com., supra,* 32 Cal.3d 603, 607 [substantial evidence review by superior court]; [see also] *State Personnel Bd.* v. *Fair Employment & Housing Com., supra,* 39 Cal.3d 422, 433, and *Kerrigan* v. *Fair Employment Practice Com.* (1979) 91 Cal.App.3d 43, 51 [154 Cal.Rptr. 29] [ ] [independent judgment review] [ ].) In any event, "[Commission] hearings are always full evidentiary proceedings governed by the California rules of evidence and conducted in accordance with the California Administrative Procedure Act. (§§ 11500 et seq., 12972.) A record is preserved to facilitate judicial review, and the [Commission] is required to issue a decision setting forth findings of fact and conclusions of law in every contested case. (§§ 11517, subd. (b), 11518.) Cross-examination is, of course, permitted. . . ." (*State Personnel Bd.* v. *Fair Employment & Housing Com., supra,* 39 Cal.3d 422, 433.)

Finally, Dyna-Med direly predicts giving the Commission authority to award punitive damages will open a Pandora's Box concerning the authority of administrative agencies generally to award punitive damages. However, although many administrative agencies are governed by the APA, it is the FEHA, not the APA, which gives the Commission the authority to order "such action . . . as, in the judgment of the commission [,] will effectuate the purposes" of the FEHA (§ 12970, subd. (a)). If the Legislature gives an agency responsibility to protect the public and authorizes it to take the appropriate steps necessary to carry out the purposes of an act it enforces, then such an agency should be authorized to determine claims for punitive damages. Whether other administrative agencies have, or will be given, such authorization can only be determined upon a review of those agencies own statutory authority, a review not necessary to this appeal.