OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 89-804 |
| of | : | |
|  | : | MARCH 8, 1990 |
| JOHN K. VAN DE KAMP | : | |
| Attorney General | : | |
|  | : | |
| RODNEY O. LILYQUIST | : | |
| Deputy Attorney General | : | |
|  | : | |

THE HONORABLE GENE L. TUNNEY, DISTRICT ATTORNEY OF SONOMA COUNTY, has requested an opinion on the following question:

May money deposited in the criminalistics laboratories fund of a county be used to pay the fees of a privately operated laboratory performing chemical analyses for controlled substances in connection with investigations of persons charged with being under the influence of controlled substances by a city or county that obtains its analyses of solid-dose controlled substances from the Department of Justice?

CONCLUSION

Money deposited in the criminalistics laboratories fund of a county may not be used to pay the fees of a privately operated laboratory performing chemical analyses for controlled substances in connection with a city or county investigation of persons charged with being under the influence of controlled substances when the county is served by the criminalistic laboratories of the Department of Justice insofar as analyses of solid-dose controlled substances are concerned.

ANALYSES

Health and Safety Code section 11372.5[1] provides:

"(a) Every person who is convicted of a violation of Section 11350, 11351, 11351.5, 11352, 11355, 11358, 11359, 11361, 11363, 11364, 11368, 11375, 11377, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, 11382, 11383, 11390, 11391, or 11550 or subdivision (a) or (c) of Section 11357, or subdivision (a) of Section 11360 of this code, or Section 4230 of the Business and Professions Code shall pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for

_____

[1] All references hereafter to the Health and Safety Code are by section number only.

1.                                                                                       89-804

each separate offense. The court shall increase the total fine necessary to include this increment.

"With respect to those offenses specified in this subdivision for which a fine is not authorized by other provisions of law, the court shall, upon conviction, impose a fine in an amount not to exceed fifty dollars ($50), which shall constitute the increment prescribed by this section and which shall be in addition to any other penalty prescribed by law.

"(b) The county treasurer shall maintain a criminalistics laboratories fund. The sum of fifty dollars ($50) shall be deposited into the fund for every conviction under Section 11350, 11351, 11351.5, 11352, 11355, 11358, 11359, 11361, 11363, 11364, 11368, 11375, 11377, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, 11382, 11383, 11390, 11391, or 11550, subdivision (a) or (c) of Section 11357, or subdivision (a) of Section 11360 of this code, or Section 4230 of the Business and Professions Code, in addition to fines, forfeitures, and other moneys which are transmitted by the courts to the county treasurer pursuant to Section 11502. The deposits shall be made prior to any transfer pursuant to Section 11502. The county may retain an amount of this money equal to its administrative cost incurred pursuant to this section. Moneys in the criminalistics laboratories fund shall, except as otherwise provided in this section, be used exclusively to fund (1) costs incurred by criminalistics laboratories providing microscopic and chemical analyses for controlled substances, in connection with criminal investigations conducted within both the incorporated or unincorporated portions of the county, (2) the purchase and maintenance of equipment for use by these laboratories in performing the analyses, and (3) for continuing education, training, and scientific development of forensic scientists regularly employed by these laboratories. Moneys in the criminalistics laboratory fund shall be in addition to any allocations pursuant to existing law. As used in this section, 'criminalistics laboratory' means a laboratory operated by, or under contract with, a city, county, or other public agency, including a criminalistics laboratory of the Department of Justice, (1) which has not less than one regularly employed forensic scientist engaged in the analysis of solid-dose controlled substances, and (2) which is registered as an analytical laboratory with the Drug Enforcement Administration of the United States Department of Justice for the possession of all scheduled controlled substances. In counties served by criminalistics laboratories of the Department of Justice, amounts deposited in the criminalistics laboratories fund, after deduction of appropriate and reasonable county overhead charges attributable to the collection thereof, shall be paid by the county treasurer once a month to the Controller for deposit into the State General Fund, and shall be excepted from the expenditure requirements otherwise prescribed by this subdivision.

"The county treasurer shall, at the conclusion of each fiscal year, determine the amount of any funds remaining in the special fund established pursuant to this section after expenditures for that fiscal year have been made for the purposes herein specified. The county treasurer shall annually distribute those surplus funds in accordance with the allocation scheme for distribution of fines and forfeitures set forth in Section 11502." (Emphases added.)

The statutes listed in section 11372.5 define offenses involving the manufacture, cultivation, possession, use, transportation, and sale of controlled substances. The list does not include Vehicle Code offenses of driving a motor vehicle while under the influence of alcohol or controlled

substances. Penal Code section 1463.14 provides a separate statutory scheme for funding the testing of blood, breath and urine of drivers suspected of violating Vehicle Code sections 23103, 23104, 23152 and 23153 for alcoholic content or the presence of drugs.

The question presented for resolution concerns the proper application of the provisions of section 11372.5. May money in a county's criminalistics laboratories fund ("Fund") be used to pay the fees of a private laboratory performing chemical analyses for controlled substances in connection with investigations of persons charged with being under the influence of controlled substances by a city or county that receives its analyses of solid-dose controlled substances from the Department of Justice? We conclude that it may not.

In analyzing section 11372.5, we are mindful of several well-established principles of statutory interpretation. "[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386.) "In doing so we look first to the words of the statute, giving them their usual and ordinary meaning." (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 501.) "Moreover, 'the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.'" (*People* v. *Craft* (1986) 41 Cal.3d 554, 560.) "The legislative history of the statute as well as the historical circumstances of its enactment may be considered in determining the intent of the Legislature." (*People* v. *Jeffers* (1987) 43 Cal.3d 984, 993.) "[R]eports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain." (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7.) "It is reasonable to presume that the Legislature [acted] with the intent and meaning expressed in the Legislative Counsel's Digest." (*People* v. *Superior Court* (*Douglass*) (1979) 24 Cal.3d 428, 434.) "Interpretive constructions which render some words surplusage, defy common sense, or lead to mischief or absurdity, are to be avoided." (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844.)

The Legislative Counsel's digest explains the purposes of the 1980 legislation (Stats. 1980, ch. 1222, § 1) which enacted section 11372.5. It states in part:

"The California Uniform Controlled Substances Act presently authorizes fines to be imposed as punishment upon conviction of certain offenses relating to controlled substances. However, nothing in present law authorizes a fine or surcharge for support of laboratories performing controlled substance analysis in connection with criminal investigations.

"This bill would require every person who is convicted of prescribed controlled substance offenses to pay an additional $50 as part of any fine imposed; the total fine would be increased to include the increment. The bill would authorize $50 fines to be imposed for such purpose with respect to offenses for which fines are not presently authorized. The bill would require the county treasurer to maintain a criminalistics laboratories fund. Fifty dollars of the fines, forfeitures, and fees for each conviction for any controlled substance offense would be deposited in this fund from fines, forfeitures, and other moneys transmitted by the courts to the county treasurer under the California Uniform Controlled Substances Act. Moneys in each county's criminalistics laboratories fund would be used to defray prescribed costs and programs of defined criminalistics laboratories providing controlled substances analysis for criminal investigations in the county, except that in counties served by criminalistics laboratories of the Department of Justice, such money, after deduction of county overhead charges, would be required to be paid monthly to the Controller

for deposit in the State's General Fund.  Moneys not utilized for the purposes specified by the bill during any fiscal year would be distributed in the same manner as prescribed by law for distribution of moneys, forfeited bail, or fines received by any court under the California Uniform Controlled Substances Act."

Section 11372.5 was thus enacted to "defray prescribed costs and programs of defined criminalistics laboratories providing controlled substances analysis for criminal investigations in the county," shifting the expense from the public to the convicted criminals.  We have found nothing in the legislative history suggesting that local governments could not use Fund moneys to pay for forensic analyses performed under contract in a private laboratory.  The statute expressly defines "criminalistics laboratory" to include "a laboratory operated . . . under contract with, a city, county, or other public agency."  Whether performed in their own laboratories or in private laboratories pursuant to contracts, the local governments would be incurring the expenses which section 11372.5 was designed to cover.  Historically local governments have contracted with private laboratories to perform analyses of controlled substances, even when they have had their own laboratories or have obtained forensic analyses from the Department of Justice.

Two express limitations should be noted with respect to the reimbursement for costs incurred by local governments pursuant to contracts with private laboratories.  The laboratory must have "one regularly employed forensic scientist engaged in the analysis of solid-dose controlled substances," and the laboratory must be "registered as an analytical laboratory with the Drug Enforcement Administration of the United States Department of Justice for the possession of all scheduled controlled substances."  Once these qualifications are met, Fund moneys may be used to pay for the services rendered as specified in section 11372.5.

The second express limitation in section 11372.5 is the exception for "counties served by criminalistics laboratories of the Department of Justice."  Under that exception if the county is served by criminalistics laboratories of the Department of Justice all monies in the Fund, after deducting overhead charges, must be paid into the State's General Fund.  We must therefore determine which counties are "served by" criminalistics laboratories of the Department of Justice within the meaning of section 11372.5 to determine which counties are excluded from use of the Fund for testing by this exception.

When section 11372.5 was enacted in 1980 (and now) a number of law enforcement agencies in the large urban areas of the state had their own criminalistics laboratories.  The law enforcement agencies in other areas of the state have utilized the services of the criminalistics laboratories of the Department of Justice for most of their criminalistics laboratory requirements.  This includes the testing of all substances suspected of being controlled substances before their ingestion by human beings which we have referred to as "solid-dose" testing to distinguish it from the testing of body fluids.  One exception to the general practice is that the criminalistics laboratories of the Department of Justice have not tested blood or urine samples of persons suspected by local agencies of using or being under the influence of a controlled substance in violation of section 11550 for controlled substances.  All local law enforcement agencies in the state have had to rely upon their own criminalistics laboratories or contract with private laboratories for testing such blood or urine samples for controlled substances.

We believe the Legislature had these practices in mind when it enacted section 11372.5.  The proponents of the 1980 legislation were the local public agencies in the urban areas of the state with their own laboratories, not the agencies in the  counties being served by Department of Justice laboratories.  When the Legislature used the words "counties served by the criminalistics laboratories of the Department of Justice" in the exception in section 11372.5 it referred to those counties which do not have criminalistics laboratories maintained by local law enforcement agencies

and rely upon the criminalistics laboratories of the Department of Justice for most of their criminalistics laboratory requirements. With respect to those counties the statute requires all money in the Fund (except overhead charges) to be paid into the State's General Fund.[2]

We conclude that money deposited in the criminalistics laboratories fund of a county may not be used to pay the fees of a privately operated laboratory performing chemical analyses for controlled substances in connection with investigations of persons charged with being under the influence of controlled substances by a city or county that obtains analyses of solid-dose controlled substances from the Department.

* * * * *

---

[2] In our view the fact that the Department of Justice provides computer links to its library to all local law enforcement laboratories in the state does not mean that the counties with such laboratories are "served by" the criminalistics laboratories of the Department of Justice within the meaning of section 11372.5. Nor, in our view, does the fact that the criminalistics laboratories of the Department of Justice do not test blood or urine samples of those suspected by local agencies of using or being under the influence of controlled substances mean that counties are not "served by" the criminalistics laboratories of the Department of Justice within the meaning of section 11372.5.