TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 91-914 |
| of | : | |
| | : | FEBRUARY 27, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |
| | : | |

THE HONORABLE BILL LOCKYER, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

Are current alterations and additions to structures that were in existence prior to May 4, 1975, subject to the seismic safety requirements of the Alquist-Priolo Special Studies Zone Act?

CONCLUSION

Current alterations and additions made to structures that were in existence prior to May 4, 1975, are not subject to the seismic safety requirements of the Alquist-Priolo Special Studies Zone Act.

ANALYSIS

In 1972 the Legislature enacted the Alquist-Priolo Geologic Hazard Zones Act (Pub. Resources Code, §§ 2621-2625).[1] The legislation was "intended to provide policies and criteria to assist cities, counties, and state agencies in the exercise of their responsibilities to provide for the public safety in hazardous [earthquake] fault zones." (§ 2621.5.)

The act required the state geologist to delineate by map "special studies zones" on or within a quarter of a mile of potentially and recently active traces of the San Andreas, Calaveras, Hayward, and San Jacinto Faults, and other faults which would "constitute a hazard to structures from surface faulting or fault creep." (§ 2622.) Thereafter cities and counties were to approve "the site of every proposed new real estate development or structure for human occupancy . . . in accordance with policies and criteria established by the State Mining and Geology Board and the

_____

[1]All section references are to the Public Resources Code unless otherwise indicated.

1.                                                                                          91-914

findings of the State Geologist" and were "not [to] approve the location of such a development or structure within a delineated special studies zone if an undue hazard would be created." (§ 2623.)

In 1975 the statutory scheme was renamed the Alquist-Priolo Special Studies Zone Act. Included in the 1975 amendments were changes in some of the reporting and disclosure duties and the granting of certain exceptions from the statutory requirements. Specifically, the following sentence was added to section 2621.5:

"This chapter . . . does not apply to any development or structure in existence prior to the effective date of the amendment of this section at the 1975-76 Regular Session of the Legislature." (Stats. 1975, ch. 61, § 3.)

The "effective date of the amendment of this section" was May 4, 1975, under an urgency clause in the legislation. In 1979 section 2621.5 was amended to reflect this date:

"This chapter . . . does not apply to any development or structure in existence prior to May 4, 1975." (Stats. 1979, ch. 1131, § 3.)

The 1975 amendments contained one other provision relevant to the present inquiry. Section 2621.8 was enacted as follows:

"This chapter shall not apply to alterations or additions to any structure within a special studies zone the value of which does not exceed 50 percent of the value of the structure."

We are asked whether current alterations and additions made to structures that were in existence prior to May 4, 1975, are governed by section 2621.5 or by section 2621.8.[2] If the former, the alterations and additions would be exempt from the seismic safety requirements of the statutory scheme. If the latter, they would be exempt only if the particular alteration or addition did "not exceed 50 percent of the value of the structure."

The question is significant in light of another statutory scheme (Gov. Code, §§ 8875-8875.5) requiring cities and counties to identify all "potentially hazardous buildings" within their jurisdictions and to establish mitigation programs for such buildings. (Gov. Code, §§ 8875.1, 8875.2.) Government Code section 8875.2, subdivision (b) states in part:

"The mitigation program may include the adoption by ordinance of a hazardous buildings program, measures to strengthen buildings, measures to change the use to acceptable occupancy levels or to demolish the building . . . ."

Conceivably, a mitigation program might require retrofitting of unreinforced masonry buildings located on fault lines but leave no alternative to the demolition of such buildings, depending on how sections 2621.5 and 2621.8 are interpreted. Such would be the case if (1) retrofitting enhanced the value of the building by more than 50 percent so as to constitute an alteration or addition under section 2621.8 and (2) alterations or additions to pre-May 4, 1975 buildings are not exempted by section 2621.5.

---

[2]Additional questions were posed that depended upon our answer of this initial question. Because of the conclusion reached, we need not address the additional questions presented.

In analyzing the provisions of sections 2621.5 and 2621.8, we are mindful of several rules of statutory interpretation. "Our primary aim in construing any law is to determine the legislative intent." (*Committee of Seven Thousand* v. *Superior Court* (1988) 45 Cal.3d 491, 501.) "[W]e seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose, i.e., the object to be achieved and the evil to be prevented by the legislation." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159.) "`Where [statutory language] is susceptible of more than one meaning, it is the duty of the courts to accept that intended by the framers of the legislation, so far as its intention can be ascertained.' . . . To discern legislative intent, we must examine the legislative history and statutory context of the act under scrutiny." (*Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570.) "[I]t is well established that reports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain." (*Hutnick* v. *Central States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7.) Finally, "statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com* (1987) 43 Cal.3d 1379, 1387.)

We have examined in detail the legislative history of the amendment of section 2621.5 and the enactment of section 2621.8 in 1975. The apparent purpose of the 1975 legislation was to make the statutory scheme more workable and less difficult to apply. It clarified what the Legislature had intended, with minor substantive changes.

With respect to alterations and additions to preexisting buildings, the staff analysis of the Senate Local Government Committee described the background for the legislation as follows:

"It is reported that in some cases, the provisions of the act have been applied to existing single-family houses and parcels. Reportedly, some local jurisdictions are requiring a geologic study before approving additions or modifications to existing homes or construction of homes on land subdivided prior to the issuance of the special studies zone maps."

In the Senate Floor Analysis, it was again explained that the bill was to address the problem of local governments applying the statutory requirements to alterations and additions made to existing buildings:

"Cases have been reported whereby the provisions of the Act were applied to existing single-family houses and parcels. (Geological studies required for modifications to existing homes . . . .)"

The Legislative Analyst provided the following analysis of the proposed legislation:

"*This bill* would require sellers or agents for sellers of real property to disclose that the property is located within a special studies zone. It would exempt mobile homes, conversions of apartments to condominiums and alterations and additions to existing structures from the requirements for local site approval. It would also exempt single frame dwellings that are part of developments of three or fewer such dwellings. New real estate developments, new multiple family dwellings and new industrial and commercial buildings would still be covered."

We believe that this legislative history amply demonstrates the purposes for amending section 2621.5 and enacting section 2621.8 in 1975. Existing buildings would need an exemption from the "development" requirements of the statutory scheme only when they were being modified by alterations or additions. That explains the amendment of section 2621.5 to exclude

preexisting structures. For those structures built after May 4, 1975, and not otherwise exempt from the act, alterations or additions would also be excluded unless they exceeded "50 percent of the value of the structure." (§ 2621.8.) The two statutes may thus be harmonized together, while giving meaning to the language of both.

Finally, we note that our interpretation of sections 2621.5 and 2621.8 does not preclude cities and counties themselves from regulating current alterations and additions made to buildings that were in existence prior to 1975. Section 2624 provides:

"Nothing in this chapter is intended to prevent cities and counties from establishing policies and criteria which are stricter than those established by this chapter or by the State Mining and Geology Board, nor from imposing and collecting fees in addition to those required under this chapter."

In answer to the question presented, we conclude that current alterations and additions made to structures that were in existence prior to May 4, 1975, are not subject to the seismic safety requirements of the Alquist-Priolo Special Studies Zone Act.

* * * * *