TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 98-105 |
| of | : | |
| | : | June 23, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

---

THE HONORABLE KEITH OLBERG, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions:

1. Are insects eligible for listing as a threatened or endangered species under the California Endangered Species Act?

2. Under what circumstances may a landowner destroy a plant on his property that is listed as threatened or endangered under the California Endangered Species Act?

3. If a landowner has not been notified by the Department of Fish and Game under the Native Plant Protection Act of the presence of a rare or endangered native plant, is the landowner required to provide notice to the department of his intent to destroy such a plant when carrying out an authorized agricultural operation, management practice, or fire control activity?

4. Is a biologist or other scientist required to have a permit under the California Endangered Species Act to conduct a survey for the presence or absence of any listed plant or animal species if the survey activities do not involve the trapping, catching, capturing, or killing of such species?

CONCLUSION

1. Insects are ineligible for listing as a threatened or endangered species under the California Endangered Species Act.

2. A landowner may destroy a plant on his property that is listed as threatened or endangered under the California Endangered Species Act when (1) federal approval has been given, (2) approval by the Department of Fish and Game has been given, (3) incidental to a properly permitted surface mining operation, (4) incidental to routine and ongoing agricultural activities that occur while specified management practices are followed, (5) due to inadvertent or ordinarily negligent acts during lawful, routine, and ongoing agricultural operations, (6) incidental to state agency projects under findings of the Department of Fish and Game, (7) incidental to specified emergency projects, or (8) incidental to certain agricultural operations, timber operations, mining assessment work, and the clearing of specified property under the Native Plant Protection Act.

3. If a landowner has not been notified by the Department of Fish and Game under the Native Plant Protection Act of the presence of a rare or endangered native plant, the landowner is not required to provide notice to the department of his intent to destroy such a plant when carrying out an authorized agricultural operation, management practice, or fire control activity.

4. A biologist or other scientist is not required to have a permit under the California Endangered Species Act to conduct a survey for the presence or absence of any listed plant or animal species if the survey activities do not involve the trapping, catching, capturing, possessing or killing of such species.

## ANALYSIS

The four questions presented for resolution concern two related statutory schemes: the California Endangered Species Act (Fish & G. Code, §§ 2050-2116; "CESA") **Footnote No. 1** and the Native Plant Protection Act (§§ 1900-1913; "NPPA"). CESA has a legislative history dating back to 1970 (Stats. 1970, ch. 1510, § 3). In its 1970 form, it did not cover plants, only rare and endangered animals. **Footnote No. 2** NPPA, on the other hand, was enacted in 1977 (Stats. 1977, ch. 1181, § 8), and its focus has always been the protection of endangered and rare native plants.

In analyzing these legislative acts, we apply well established principles of statutory construction. We are to "'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (*California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632.) In determining the Legislature's intent, we first "scrutinize the actual words of the statute, giving them a plain and commonsense meaning. [Citations.]" (*People* v. *Valladoli* (1996) 13 Cal.4th 590, 597.) "In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose . . . ." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159.)

Here, the two statutory schemes obviously have overlapping provisions and are in fact connected by reference (§ 2080). Accordingly, we apply the rule that "[s]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387; see *DeVita* v. *County of Napa* (1995) 9 Cal.4th 763, 778.) With this background in mind, we turn to the four questions submitted for resolution.

1. Insects as Endangered Species

The first question to be examined is whether insects are eligible for listing as a threatened or endangered species under CESA. We conclude that they are not eligible.

CESA is concerned with the conservation, protection, restoration and enhancement of endangered and threatened species and their habitats. (§ 2052.) The definitions of covered "species" are contained in three statutes. Section 2062 provides:

"'Endangered species' means a native species or subspecies of a bird, mammal, fish, amphibian, reptile, or plant which is in serious danger of becoming extinct throughout all, or a significant portion, of its range due to one or more causes, including loss of habitat, change in habitat, overexploitation, predation, competition, or disease. Any species determined by the commission as 'endangered' on or before January 1, 1985, is an 'endangered species.'" **Footnote No. 3**

Section 2067 states:

"'Threatened species' means a native species or subspecies of a bird, mammal, fish, amphibian, reptile, or plant that, although not presently threatened with extinction, is likely to become an endangered species in the foreseeable future in the absence of the special protection and management efforts required by this chapter. Any animal determined by the commission as 'rare' on or before January 1, 1985, is a 'threatened species.'"

Section 2068 provides:

"'Candidate species' means a native species or subspecies of a bird, mammal, fish, amphibian, reptile, or plant that the commission has formally noticed as being under review by the department for addition to either the list of endangered species or the list of threatened species, or a species for which the commission has published a notice of proposed regulation to add the species to either list." **Footnote No. 4**

These definitions limit the application of CESA to birds, mammals, fish, amphibians, reptiles, and plants. Insects do not fall within any of these categories. In zoological terms, insects comprise the Insecta class of the phylum Arthropoda. (Webster's Third New Internat. Dict. (1971) p. 1168.) Since they are not within the governing definitions contained in CESA, insects are not eligible for listing as threatened or endangered species thereunder. **Footnote No. 5** While the last sentence of section 2062 and of section 2067 "grandfather" certain designations made prior to 1985, no insects were so designated. Therefore, we need not inquire whether insects were eligible for listing prior to 1985.

We conclude that insects are ineligible for listing as a threatened or endangered species under CESA.

2. Destroying Endangered or Threatened Plants

The second question to be addressed concerns the circumstances under which a landowner may destroy a plant on his property that is listed as threatened or endangered under CESA. We conclude that such a plant may be destroyed in a variety of specified circumstances.

CESA provides for the establishment of lists of threatened and endangered species. (§ 2070; Cal. Code Regs, tit. 14, § 670.2.) Section 2080 provides:

"No person shall import into this state, export out of this state, or take, possess, purchase, or sell within this state, any species, or any part or product thereof, that the commission determines to be an endangered species or a threatened species, or attempt any of those acts, except as otherwise provided in this chapter, the Native Plant Protection Act (Chapter 10 (commencing with Section 1900) of this code), or the California Desert Native Plants Act (Division 23 (commencing with Section 80001) of the Food and Agricultural Code))."

With reference to plants, the term "take" as used in section 2080 means to destroy. (§ 96 ["'Take' means . . . kill . . ."]; see *Department of Fish & Game* v. *Anderson-Cottonwood Irrigation Dist.* (1992) 8 Cal.App.4th 1554; 78 Ops.Cal.Atty.Gen. 137 (1995).) Accordingly, a plant listed under CESA may only be destroyed as authorized by CESA or NPPA. **Footnote No. 6**

CESA authorizes the destruction of a plant in a number of circumstances. Section 2080.1 provides:

"The department may authorize acts that are otherwise prohibited pursuant to Section 2080, as follows:

"(a) . . . if any person obtains from the Secretary of the Interior or the Secretary of Commerce an incidental take statement pursuant to Section 1536 of Title 16 of the United States Code or an incidental take permit pursuant to Section 1539 of Title 16 of the United States Code that authorizes the taking of an endangered species or a threatened species that is listed pursuant to Section 1533 of Title 16 of the United States Code and that is an endangered species, threatened species, or a candidate species pursuant to this chapter, no further authorization or approval is necessary under this chapter for that person to take that endangered species, threatened species, or candidate species identified in, and in accordance with, the incidental take statement or incidental take permit, if that person does both of the following:

"(1) Notifies the director in writing that the person has received an incidental take statement or an incidental take permit issued pursuant to the federal Endangered Species Act of 1973 (16 U.S.C.A. Sec. 1531 et seq.).

"(2) Includes in the notice to the director a copy of the incidental take statement or incidental take permit.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ." **Footnote No. 7**

Hence, under section 2080.1, a landowner may destroy a threatened or endangered species listed under CESA if he has federal approval and follows the prescribed procedures.

Subdivision (a) of section 2081 authorizes the Department to approve the destruction of an endangered or threatened plant "for scientific, educational, or management purposes." Similarly, authorization may be given where the destruction is incidental to an otherwise lawful activity and the impact is minimized and fully mitigated and other conditions are met. (§ 2081, subds. (b) and (c).) The Legislature has also authorized the destruction of an endangered or threatened species pursuant to a Department permit, memorandum of understanding, plan, or similar agreement within a prescribed time frame. (§ 2081.1.)

Private entities, including landowners, may destroy a plant species listed under CESA incidental to a properly permitted surface mining operation. (§ 2081.5.) Plants listed under CESA may also be destroyed in connection with routine agricultural operations that occur pursuant to specified management practices. (§ 2086.) Moreover, an accidental destruction from inadvertent or ordinarily negligent acts during the course of lawful routine and ongoing agricultural operations is not prohibited. (§ 2087.) A plant listed under CESA may be destroyed incidental to state agency projects under findings made by the Department (§ 2090, subds. (a), (c)) and incidental to specified emergency work necessary to protect life or property (§ 2090, subd. (c)).

As previously noted, a plant listed under CESA may be destroyed if such destruction is allowed under NPPA. (§ 2080.) NPPA has its own emergency provision (§ 1912) and allows destruction of a listed plant with respect to "agricultural operations or management practices, including the clearing of land for agricultural practices or fire control measures" (§ 1913, subd. (a)) and "timber operations in accordance with a timber harvesting plan . . . or required mining assessment work pursuant to federal or state mining laws, or the removal of endangered or rare native plants from a canal, lateral ditch, building site, or road, or other right-of-way . . ." (§ 1913, subd. (b)). **Footnote No. 8**

We thus conclude in answer to the second question that a landowner may destroy a plant on his property that is listed as threatened or endangered under CESA when (1) federal approval has been given, (2) approval by the Department has been given, (3) incidental to a properly permitted surface mining operation, (4) incidental to routine and ongoing agricultural activities that occur while specified management practices are followed, (5) due to inadvertent or ordinarily negligent acts during lawful, routine, and ongoing agricultural operations, (6) incidental to state agency projects under findings of the Department, (7) incidental to specified emergency projects, or (8) incidental to certain agricultural operations, timber operations, mining assessment work, and the clearing of certain property under the provisions of NPPA.

3. Obligation To Notify the Department

We next consider whether a landowner is required to give notice of his intention to destroy a rare or endangered native plant in an activity authorized under NPPA (§ 1913, subds. (a), (b)) if he has not been previously notified by the Department of the presence of the plant on his property. As indicated above, NPPA requires that:

". . . where the owner of land has been notified by the department pursuant to Section 1903.5 that a rare or endangered native plant is growing on such land, the owner shall notify the

department at least 10 days in advance of changing the land use to allow for salvage of such plant." (§ 1913, subd. (c).) **Footnote No. 9**

We conclude that the landowner has no obligation to notify the Department if the Department has not first notified him of the presence of a rare or endangered native plant.

A landowner may destroy a rare or endangered native plant pursuant to NPPA under specified conditions. (§ 1913, subds. (a), (b).) This authorization carries over to CESA for plants listed as threatened or endangered under the latter statutory scheme. (§ 2080.) The only limitation is a 10-day delay period to salvage the plant if the Department has provided the landowner with the appropriate notice. (§ 1913, subd. (c).) The statute does not require the landowner to provide notice in the first instance, and no sanction is authorized when the plant is destroyed in the specified circumstances without the Department's prior notification to the landowner.

We conclude that a landowner is not required to provide notice to the Department under section 1913, subdivision (c), unless the landowner has been notified by the Department of the presence of a rare or endangered native plant on the landowner's property.

4. Permit For Biology Surveys

The final question we address is whether a biologist or other scientist is required to have a permit pursuant to CESA to conduct a survey for the presence or absence of a listed plant or animal species if the survey activities will not involve the trapping, catching, capturing, or killing of any species. We conclude that a permit is unnecessary in such circumstances.

Section 2081 provides:

"The department may authorize acts that are otherwise prohibited pursuant to Section 2080, as follows:

"(a) Through permits or memorandums of understanding, the department may authorize individuals, public agencies, universities, zoological gardens, and scientific or educational institutions, to import, export, take, or possess any endangered species, threatened species, or candidate species for scientific, educational, or management purposes.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

Section 2080, as quoted above, prohibits the "import into this state, export out of this state, or take, possess, or sell within this state, [of] any species . . . ."

No permit is necessary under subdivision (a) of section 2081 for a scientific survey that does not violate the prohibition of section 2080. Since the scientific survey in question will not involve the trapping, catching, capturing, or killing of any species, no permit is necessary under CESA.

We conclude in answer to the fourth question that a biologist or other scientist is not required to have a permit under CESA to conduct a survey for the presence or absence of any listed plant or animal species if the survey activities do not involve the trapping, catching, capturing, or killing of any species.

* * * * *

---

**Footnote No. 1**
Hereafter references to the Fish and Game Code will be by section number only.

**Footnote No. 2**
As of January 1, 1985, a "rare" animal became a "threatened" species under CESA. (§ 2067.)

**Footnote No. 3**
The "commission" is the Fish and Game Commission. (§ 30.)

**Footnote No. 4**
The "department" is the Department of Fish and Game. (§ 37; "Department.")

**Footnote No. 5**
By comparison, the Federal Endangered Species Act explicitly includes "any member of the animal kingdom, including, without limitation any . . . arthropod or other invertebrate . . . ." (16 U.S.C. § 1532(8).)

**Footnote No. 6**
Plants falling within the purview of the California Desert Native Plants Act are beyond the scope of this opinion.

**Footnote No. 7**
The "director" is the Director of Fish and Game. (§ 39.)

**Footnote No. 8**
As will be discussed below, if the owner of the land has been notified by the Department "that a rare or endangered native plant is growing on such land, the owner shall notify the department at least 10 days in advance of changing the land use to allow salvage of such plant." (§ 1913, subd. (c).)

**Footnote No. 9**
The Department's notification of landowners is specified in section 1904, not section 1903.5.

---